[No. 3,498.]

## S. C. HASTINGS *v.* A. P. JACKSON AND JOHN DEVLIN.

SELECTION OF FIVE HUNDRED THOUSAND ACRES OF LAND GRANTED TO EACH STATE.—No valid selection can be made of the five hundred thousand acres of land granted to each State by the Act of Congress of September 4th, 1841, until after the land selected has been surveyed by the proper officers of the United States.

IDEM.—No valid selection of such lands can be made except in the manner prescribed by the Legislature of the State.

IDEM.—Neither the Secretary of the Interior nor any officer of the Land Department of the General Government has authority to determine the question of the regularity or the sufficiency of the selection of such lands.

IDEM.—As between conflicting claimants to such lands, under the State, neither the Commissioner of the General Land Office nor the Secretary of the Interior has the power to decide.

IDEM.—The proper officers of the General Government must approve of the selection of such lands when made in accordance with the laws of the State, and in such parcels and from such lands as the Act of Congress prescribes, but beyond such approval they have no power to act.

WHO MAY NOT ATTACK PATENT MADE BY THE STATE.—A person who, with a State land warrant, locates three hundred and twenty acres of land under the provisions of the Act of May 3d, 1852, for the disposal of the five hundred thousand acres of land granted to the State, but whose location is void because made before the land is surveyed by the United States, bears no such relation to the land as to enable him to attack a patent made by the State for the same land to a person who makes a subsequent location, after a survey.

ERROR WHICH DOES NOT PREJUDICE.—A judgment will not be reversed for error in admitting testimony, if the appellant is not prejudiced thereby.

APPEAL from the District Court of the Seventh Judicial District, County of Solano.

The complaint contained a full recital of all the proceed-
ings in the State and United States Land Offices, and averred
that defendant Jackson had sold all or the greater portion of
the land to defendant Devlin, but held a mortgage on the
same to secure the purchase money. There was a prayer
that the defendants be enjoined from setting up any claim
or title to the land under or by virtue of the patent. The
complaint seems to be based on the theory that the defend-
ants held the legal title in trust for plaintiff.

The defendants on the trial were permitted to introduce
in evidence a certficate of S. T. Nye, the Register of the
United States Land Office at Stockton, California, that on
the 14th day of February, 1857, State school land warrants
numbers one hundred and sixty-one and three hundred and
forty-three, for one hundred and sixty acres each, were located
by A. P. Jackson upon the land in controversy, and that the
warrants were on file with the word " Surrendered " written
across their face, and that the land had been surveyed by
the United States, and the plats of survey approved by the
Surveyor General, and that the location had been made with
the consent of the Register and Receiver of the Land Office.
The certificate was dated March 18th, 1863.

The other facts are stated in the opinion.

*William S. Wells* and *William Irvine,* for Appellant.

The point that was strenuously insisted upon on the trial
by defendant's counsel, that the patent to Jackson was con-
clusive of the question, not only of his legal title to the land,
but of his equity as well and which may or may not be the
basis of the last two conclusions of law found by the Judge,
cannot, of course, be maintained. His Honor, Judge FIELD,
in an opinion delivered by him on July 29, 1869, in the
case of *Alexander Hardy* v. *James M. Harbin, et al.,* holds
that while at law, in an action for ejectment, for example,
the patent is conclusive upon the question of the legal title

until it shall have been vacated and set aside; but, in equity, it is not evidence of any equitable relations between the patentee and a party claiming by a prior equitable right. The learned Judge then proceeds: "There is nothing in the numerous decisions of the Supreme Court of this State which militates against this view. Those decisions, with one or two exceptions, were rendered in actions of eject-ment, and only affirm the conclusiveness of the patents in determining the title of the patentees in such actions."

In *Estrado* v. *Murphy*, 19 Cal. 248, the Court says: "From the case of *Castro* v. *Herrick*, 23 How. R. 441, and other cases in the Supreme Court of the United States, that the mere fact that a particular person obtained a patent from the Government, was not conclusive of his exclusive rights, but that it might be shown in a proper proceeding that others were interested or had a better right."

In *Moore* v. *Wilkinson*, 13 Cal. 478, it is laid down "that a patent cannot be attacked collaterally, even for a fraud, whether charged to have existed in the procurement of the grant, or in the proof of its execution, or in the making of the survey; but that individuals can resist the conclusive-ness of the patent by showing that it conflicts with prior rights vested in them."

In *McNear* v. *Hutchinson*, 31 Cal. 177, it was held that a purchaser of swamp and overflowed lands from the State, under the Act of 1855, prior to its repeal in 1858, though no patent had been issued, had a vested right in the land which could not be taken from him by the repeal of the Act, and including the same land in a grant in the City of Petaluma.

It may be that the relief prayed for in the complaint, that the patent to Jackson be vacated and canceled, is not the proper relief to which the plaintiff is entitled. If that be so, however, the plaintiff is, notwithstanding the prayer, entitled to such relief as the allegations of his complaint, and the facts established by the proof, in equity entitle him

to. This rule is without exception, and too familiar to need the citation of authorities. Clearly, the plaintiff is entitled to have the defendants adjudged to be holders of the legal title in trust for him, and that they be decreed to make conveyance thereof and surrender up the possession of the land to him.

*M. A. Wheaton*, for Respondents.

In another suit, growing out of this same transaction (*Hastings* v. *Devlin*, 40 Cal. 363), this Court held that the attempted location made of warrant one hundred and thirty-three, by the County Surveyor, "was a nullity, and conferred no rights in the land upon the locator."

At the time the alleged steps were taken to locate the warrants, there was no authority of law for locating those warrants, except the State Act of 1852. The land was granted by the eighth section of the United States Preemption Law of September 4th, 1841, and that provides that the selections shall be made within the limits of each State, "in such manner as the Legislature thereof shall direct." Although there are some limitations to this legislative direction, still all selections must be made within those limitations, and only as the Legislature shall direct. No selections could possibly be made except as the Legislature should direct. Congress did not reserve to herself any right to make the selections. Congress refused to allow the State to make selections upon unsurveyed lands. But neither could Congress herself make the selections upon unsurveyed lands. The only way locations could be made upon unsurveyed lands was for Congress to remove the limitation contained in said eighth section of the Preëmption Act, and allow the State to direct such selections to be made. (*Megerle* v. *Ashe*, 33 Cal. 83.) When the attempt was made to locate warrant one hundred and thirty-three, there were no directions or authority for locating the same other than

the Act of the Legislature of 1852.  The warrant itself was
the creature of that Act.  Section three of the legislative
Act (Hittell, Art. 3973), authorizes the owner of the war-
rant to locate the same only upon land "subject to such loca-
tion," and in tracts of not less than three hundred and
twenty acres.  The Act then goes on and describes how a
location may be made upon unsurveyed lands, and section
five declares the effect of the location thus made to be, that
"it shall secure to the purchaser the right of possession to
the land  *  *  *  until such time as the Government sur-
vey shall have been made," etc.

The Act does not provide for the surrendering of the
warrants anywhere when located.  It does not once name
either the United States Register or Receiver, or provide
for their assisting in any way, in locating the warrants, or
filing them in their offices, or receiving their surrender in
any way.  At the time the law was passed there was not
an acre of surveyed land in the State; and it is doubtful if
the Legislature intended to do anything more than to sell
the warrants, and, by the "location" process described in
the Act, secure, in another way, the benefits of the so-called
"Possessory Act, to wit: a temporary possession of the
public lands.  There was nothing in the Act which com-
pelled the locator to ever give up his warrant, and take the
land so located for it.  The Register had no authority to
approve locations of unsurveyed land any more than of tide
lands.  (*Farish* v. *Coon*, 40 Cal. 50, 51.)

By the Court, BELCHER, J.:

In June, 1853, one Isaac Thomas, being then the owner of
school land warrant number one hundred and thirty-three,
for three hundred and twenty acres of land, proceeded to
locate his warrant upon the south half of a certain section
fourteen, in conformity with the provisions of the Act of

May 3d, 1852, to provide for the disposal of the five hundred thousand acres of land granted to this State by Act of Congress. The land was then unsurveyed public land of the United States, and the attempted location was void, and conferred no rights in the land upon the locator. (*Hastings* v. *Devlin*, 40 Cal. 358.) In October, 1853, the township in which the land was situated was surveyed by the United States, and the plat of the survey was returned to and filed in the local land office. On the 24th of December, 1853, a list called "List No. 9, exhibiting the tracts of public land situated in the district of lands subject to sale at Benicia, which have been selected for the State of California under the eighth section of the Act of Congress, approved 4th September, 1841, entitled 'An Act to appropriate the proceeds of the sales of the public lands, and to grant preëmption rights,'" was made and filed in the Land Office. It showed a description and the number of acres of the land which Thomas had attempted to locate, and had entries upon it in these words :

"Warrant No. 133, State of California, 24th December, 1853.—I hereby apply, in behalf of the State of California, for the tracts described in this list as being selected for said State under the eighth section of the Act of 4th September, 1841.

"ISAAC THOMAS, Agent."

"Land Office, at Benicia, 24th September, 1853.—I hereby certify that the foregoing list was filed in this office on the 24th December, 1853, and that the selections are correct, and that no valid conflicting right is known to exist.

"WM. W. GIFT, Register."

This list and the warrant number one hundred and thirty-three were afterwards forwarded to the General Land Office, at Washington, where they remained, without approval or

other action in reference to them, until February, 1870. Upon the warrant, when forwarded, there was an indorsement, in these words:

"I have located the within warrant upon the south half of section fourteen, township five north, range one west, Mount Diablo meridian.

"I. THOMAS.

"December 24th, 1853."

An imperfect copy of the list was made and retained in the Land Office, from whence it was produced at the time of the trial. In making entries of the selection upon the books of the office, the clerks in the Land Office, by some mistake, entered the selection as upon the south half of section twelve, and there was nothing, either upon the books or plats in the office, showing that there was any claim upon the south half of section fourteen until the location thereon by the defendant Jackson. In February, 1857, the defendant Jackson located two school land warrants, for a hundred and sixty acres of land each, upon the south half of the same section fourteen, and such proceedings were thereafter taken to make effectual his location that in March, 1863, he secured from the State of California a patent, executed in due form, purporting to convey to him the said land in fee. In June, 1858, the plaintiff became the purchaser at Sheriff's sale of all the right, title, and interest which Thomas had in the south half of the said section fourteen, and at the end of six months, no redemption being had, received a Sheriff's deed therefor. On the 10th of February, 1870, the land in question was listed by the United States to this State. On the 8th of September, 1871, the Commissioner of the General Land Office addressed a letter to the Register of the Land Office at San Francisco, in which he inclosed the warrant number one hundred and thirty-three and the original list made December 24th, 1853, and also the warrants lo-

cated by Jackson, and informed the Register that he had that day canceled the location made by Jackson in February, 1857, for the reason that it conflicted with the prior location made by Thomas, December 24th, 1853. The Register was also instructed in the letter to amend his records so as to show the location of Thomas to be upon the south half of section fourteen instead of the south half of section twelve.    Upon the original list returned by the Commissioner was an unsigned indorsement in these words: "Approved February 14th, 1870."    This action was commenced in August, 1866; and the prayer of the complaint is that the defendants be ordered to deliver up to be canceled the patent issued to the defendant Jackson, and that they also deliver up the possession of the premises.    The case was tried by the Court in 1871, and judgment rendered for the defendants, from which and from an order denying a motion for new trial this appeal is taken.

The Court below found as a fact that Thomas did not on the 24th day of December, 1853, or at any other time, present to the Register of the Land Office the location of school land warrant number one hundred and thirty-three, named in the complaint, nor was such location ever accepted or approved by the said Register.    It also found that the said land warrant was never filed in the office of said Register at any time prior to the location by Jackson of his warrants in February, 1857.

Counsel for appellant now claims that these findings "are in denial of the most full, complete, and uncontradicted proofs."    The location referred to in the first finding is the location alleged to have been made in June, 1853.    The complaint sets out that location with particularity, and then alleges "that subsequently, on or about the 24th day of December, 1853, said location was duly presented to the Regis-

ter of the Land Office of the United States of the district wherein the same was located, and was by him duly accepted and approved." The answer admits the making of the location in June, but denies that it was ever at any time presented to or accepted or approved by the Register of the Land Office. On looking into the record we fail to find any evidence in reference to the June location or its alleged presentation to the Register. The case was evidently tried upon the theory that the proceedings taken in December constituted a sufficient location without reference to the earlier proceedings taken in June.

The objection to the second finding is also without support in the record. After setting out the presentation of the "said location" to the Register, on or about the 24th of December, 1853, the complaint alleges "that subsequently the said warrant number one hundred and thirty-three was filed in the office of the Register of the United States Land Office for the district," etc.; and this allegation is not denied. The warrant was produced at the trial, and it was shown to have been recently received from the Commissioner of the General Land Office, but it bore no indorsement or mark showing that it was ever in the local Land Office, nor did that fact otherwise appear. Construing this allegation most strongly against the plaintiff, as the Court below must have done, there is nothing either in the pleadings or evidence in conflict with the finding.

In view of the before-mentioned facts a single question is presented for our determination: Did the making and filing of the list with its indorsements on the 24th of December, 1853, constitute a valid location of the warrant, so that the beneficial interest in the specific parcel of land sought to be taken thereupon vested in the locator?

By the eighth section of the Act of Congress of September 4th, 1841, there was granted to each of the States five hundred thousand acres of land; "the selections in all of

said States to be made within their limits, respectively, in such manner as the Legislature thereof shall direct, and located in parcels conformably to sectional divisions and subdivisions of not less than three hundred and twenty acres in any one location, on any public land except such as is or may be reserved from sale by any laws of Congress or proclamation of the President of the United States, which said location may be made at any time after the lands of the United States in said States, respectively, shall have been surveyed according to existing laws."   .

It is settled in this State that no valid selection of any of these lands can be made until after they are surveyed by the proper officers of the General Government, nor of any specific parcel to which there is at the time a subsisting valid claim by preëmption or otherwise; nor unless the selection is made in parcels, conformably to sectional divisions and subdivisions of not less than three hundred and twenty acres. · (*Terry* v. *Megerle*, 24 Cal. 609; *Grogan* v. *Knight*, 27 Cal. 520.) It is equally clear that no valid selection can be made except in the manner prescribed by the Legislature of the State. Neither the Secretary of the Interior nor any officer of the Land Department of the General Government has authority to determine the regularity or sufficiency of the selections. (*Megerle* v. *Ashe*, 33 Cal. 83.) It is necessary that the selections be approved by the proper officers of the General Government, in order that it may be known that the land is subject to selection; but, as between two conflicting claimants under the State, neither the Commissioner of the General Land Office nor the Secretary of the Interior has power to decide. In considering the question in hand we therefore wholly disregard the order made by the Commissioner in September, 1871, canceling the locations made by Jackson. More than a year and a half before that order was made the Commissioner had exhausted his power in the premises in listing the land over to the State.

By the Act of May 3d, 1852, under which warrant number one hundred and thirty-three was issued, and sought to be located, no provision was made for the proceedings taken in the Land Office in December, 1853. Those proceedings were taken solely in pursuance of instructions from the Commissioner of the General Land Office, and were not in the "manner" prescribed by the Legislature of the State. But by the terms of the Act making the grant, the selection could only be made in such manner as the Legislature should direct. The attempt made by Thomas in June to locate his warrant, was in the manner prescribed by the Legislature. That failed, however, because the land was then unsurveyed and not subject to selection. There was no subsequent attempt to follow the law of the State, but the unauthorized proceedings of December are brought forward as a substitute. We know of no law, State or Federal, by which this can be justified. The case of *Hastings* v. *Devlin*, 40 Cal. 358, seems to be altogether in point. In that case the action was brought by the plaintiff here against one of the defendants here to recover the possession of the same land involved in this case. At the trial the plaintiff had introduced in evidence, among other things, the certificate of the Register of the Land Office, dated December 24th, 1853, to the effect that Thomas had that day located at his office the land in controversy under warrant number one hundred and thirty-three. The Court held the certificate not admissible in evidence, and among other things said: "We know of no statute of California or of the United States, authorizing the performance of the acts set forth in the certificate of Gift, Register of the Land Office at Benicia, of December 24th, 1853."

The suggestion is made that the patent was improperly issued to Jackson, because the land was not at the time listed to the State, and because no notice of his application for it was published as required by law. Whether the suggestion

is well founded or not we cannot consider, for the reason that the plaintiff bears no such relations to the property as entitle him to call in question the title of the defendants.

It also claimed that the Court below erred in admitting in evidence the certificate of the Register of the Land Office at Stockton. It may have been error, but, if so, it is quite apparent from what has already been said that the plaintiff was in no way prejudiced thereby.

Judgment and order affirmed.

Mr. Chief Justice WALLACE did not express an opinion.