Myrick, Sharpstein, Ross, and McKinstry, JJ., concurred.

McKee and Thornton, JJ., concurred in the judgment.

---

[No. 5,793.—Department Two.]
June 16, 1881.

## PEOPLE ex rel. S. C. HASTINGS v. A. P. JACKSON ET AL.

Location of School-land Warrant on Unsurveyed Land—Action to Set Aside Patent—Law of the Case.—In June, 1853, a school-land warrant issued under the Act of May 3, 1852, was located by the relator's predecessor in interest upon the land in controversy, then unsurveyed. October 1st of the same year the land was surveyed. December 24th of the same year the location was presented to the Register of the United States Land Office of the district wherein the land was located, and was by him accepted and approved. In February, 1857, the defendant located two school-land warrants upon the land, and obtained a patent for it from the State in March, 1863. The land was not listed by the United States until February, 1870. This action was brought to set aside the patent.

*Held:* It does not appear that anything has transpired since the commencement of the action of *Hastings* v. *Jackson*, 46 Cal. 234, to change the relation which then existed between the parties, or to materially affect their rights in the premises. The grounds upon which the plaintiff in that case claimed relief are those upon which the plaintiff in this case claims relief, and the Court in that case passed upon all the questions involved in this, except that he declined to consider whether the State could avoid its conveyance to Jackson. It must be admitted that the patent to Jackson was prematurely issued, and that until after the certification of the land over to the State, the patent could not convey the title. Still, upon a valid location made after survey and before certification, the locator was in a position to demand and compel the issuance of a patent whenever the land so located should be certified over to the State. The State, therefore, can not avoid the patent on the ground that it was prematurely issued. Nor was the validity of the location affected by failure to publish a notice of the locator's application to the Register

for a certificate of location. The State certainly was in no way preju- diced by the failure to publish such notice; and no one can take advan- tage of the omission without showing that he was in some way prejudiced by it.

ID.—ID.—ID.—ACT OF JULY 23, 1866, "TO QUIET LAND TITLES IN CALI- FORNIA."—The Act of Congress above referred to can not be so construed as to affect a valid location made prior to its passage. It would cure the invalidity of the first location if no intervening right had accrued in the mean time; but a valid location was afterwards made before the passage of the Act, which it was clearly not the intention of Congress to inter- fere with.

APPEAL from a judgment for the defendant in the Seventh District Court in and for the County of Solano.

The validity of the respective titles involved in this case were before the Court in *The People ex rel. Hastings* v. *Jack- son et al.*, 24 Cal. 630; *Hastings* v. *Devlin*, 40 id. 358; and *Hastings* v. *Jackson*, 46 id. 234. The present case is an ac- tion to set aside the patent issued to Jackson, and judgment went for the defendant on a demurrer to the complaint.

*Cope & Boyd*, for Appellants.

It is the settled doctrine of this Court that title to the lands embraced in the five-hundred-thousand-acre grant of Septem- ber 4, 1841, does not pass to the State until the particular parcel thereof has been listed to the State by the Commissioner of the General Land Office of the United States. (*Chant* v. *Reynolds*, 49 Cal. 217, and cases cited; 5 U. S. Stats. at Large, 455, § 8; 10 id. 346; *Hastings* v. *Jackson*, 46 Cal. 243; *To- land* v. *Mandell*, 38 id. 42.)

Having no title to the lands at the time of the making of her patent to Jackson, she could not confer any title thereto upon him.

The patent was the act of officers of the State, acting with- out authority of law. Those officers were only authorized to issue patents for lands in the cases provided by law. The patent having been issued without authority, it is invalid, and should be set aside. (*The People* v. *John Carrick*, 51 Cal. 328; *Chant* v. *Reynolds*, 49 id. 218.)

The location made by Thomas was made in strict conform- ity with the requirements of the Act of 1852, and was made in the year 1853. The location by defendant Jackson was

made in the year 1857, nearly four years subsequently. Neither location was sufficient to invest the locator with the title to the lands.

On the twenty-third day of July, 1866, Congress passed an Act entitled "An Act to quiet land titles in California." (14 U. S. Stats. at Large, p. 218.) Thomas was a purchaser in good faith, under the laws of the State, within the meaning of the first section of the Act. He paid value for his land warrant. He paid the Surveyor and County Clerk's fees. (*Bludworth* v. *Lake*, 33 Cal. 262; *Hodapp* v. *Sharp*, 40 id. 69.)

It became the duty of the officers of the State to notify the proper officers of the general government of her selection, and if upon investigation the land should be found subject to selection, the Commissioner of the General Land Office was required to certify it to the State in the usual manner. The notice was given and the land was listed over to the State, February 10, 1870. The effect of this listing was to invest the State with the legal title to these lands in trust for the purchaser from her, whose title was confirmed by the first section of the Act of Congress. Who was the beneficiary under this Act? It is evident that Thomas, if there had been no other selection but his, would have been the beneficiary.

Let us see what effect the selection by Jackson had upon Thomas' rights. The Act of Congress of 1866 operated equally upon all purchasers in good faith from the State, and in the cases provided for in Section 1, confirmed the titles thus acquired. It created no distinction between different purchasers of the same lands, and recognized none. (*Le Roy* v. *Cunningham*, 44 Cal. 599.) Where the Act of Congress is so operative, the question must be settled by priority of right. And in this case, Thomas' selection being prior in point of time to Jackson's, he had the prior right and thereby became the beneficiary. (*Field* v. *Seabury*, 19 How. 332.)

In the Acts subsequent to that of 1852, dealing with the five-hundred-thousand-acre grant, the Legislature of this State declared that nothing in these Acts contained should be construed to invalidate or injure the rights that parties have acquired by purchase and location of any school-land

warrant, pursuant to the Act of May 3, 1852. (§ 4, Act of April 30, 1857; Laws, p. 356; § 12, Act of April 25, 1858; Laws, p. 248.)

And in such Acts provision is only made for the sale of the unsold portion of the five hundred thousand acres. (See § 1, Act of April 25, 1858; Laws, 248; § 2, Act of April 27, 1863; Laws, 591; § 51, Act of March 28, 1868; Laws, 507.) Whether the selection and location authorized by the Act of 1852 was binding on the United States is an immaterial question. It is binding on the State and her grantees.

The State acquired the title in trust for her grantee, the beneficiary. (*Bludworth* v. *Lake*, 33 Cal. 262; *People* v. *Shearer*, 30 id. 648.) A court of equity will control the legal title in the hands of the trustees, so as to protect the just rights of others. (*Estrada* v. *Murphy*, 19 Cal. 248; *Salmon* v. *Symonds*, 30 id. 301; *O'Connell* v. *Dougherty*, 32 id. 462; *Carpentier* v. *Montgomery*, 13 Wall. (U. S.) 496.)

*Wheaton & Scrivner*, for Respondents.

The complaint shows that in fact neither Thomas nor Hastings ever had any equities in the land whatever. The Act of 1852, under which the land warrants were sold, only allowed the warrants to be located on lands " within the State of California, subject to such location." (*Hastings* v. *Devlin*, 40 Cal. 363.) The allegations of the complaint in this case are no broader than were the proofs in the case above cited. The trouble with these allegations is that they do not, if true, constitute any selection of the land under any law of the State or United States. The Legislative Act of 1852 did not once refer to the United States Land Office or the United States Register. It did not provide for filing the warrants in the United States Land Office, or anywhere else, or for surrendering the warrants in any form, or for writing the word " surrendered " across the face thereof, or for the issuance of any certificate by the United States Register. All these proceedings were unauthorized by State or national law, and were utterly idle and void proceedings. (*Hastings* v. *Jackson and Devlin*, 46 id. 244.)

It is evident that the law of 1852 did not intend to provide for the transfer of any legal or equitable interest in the

land. It gave no other relief on the location of its warrant than a naked right of possession, until the land should be surveyed by the United States Government. The provisions of the law of 1852 conflicted with the United States law which made the grant. These provisions, even had they been valid, limited the rights which could be obtained under the Act to a mere right of possession, and possibly to a right to obtain a patent by complying with the terms of the future legislation, yet expected and indicated in Section 14, provided the location made under the Act should be made to correspond with the expected United States survey, when made as stated in Section 14. In view of the fact that there is no allegation in the complaint that the location of Thomas, under the Act, ever was made to correspond with the subsequent United States survey, and there is no allegation that the provisions of the subsequent laws for obtaining a patent were complied with, we think it clear that neither Thomas nor Hastings ever could or ever did acquire any rights or equities in the land in dispute.

The complaint does not negative the regularity of the proceedings under and by which Jackson located his warrants and obtained his patent.

The patent issued to Jackson according to law, and it was issued by the officers authorized to issue it. It was not void upon its face. It was not prohibited by law, and was not issued without authority. The State, at least, is concluded by it. (*Durfee* v. *Plaisted*, 38 Cal. 83.) It is true that no title vested in the State under the law of July, 1866, until the lands were "certified over to the State," etc. (*Collins* v. *Bartlett*, 44 id. 371.) This provision in the law of July, 1866, could have no application to Jackson's selection, which was made several years before, and was made upon the land after survey by the United States, and was a valid selection when made.

But suppose the title to the land did not vest in the State till February, 1870, the patent to Jackson still passed such title when it did vest in the State. The law of 1859, Section 4, declared that "such patents shall vest in the grantee therein named a good and valid title, in fee simple, to the lands therein described." Surely such a patent would vest in

the patentee any title subsequently acquired by the State, whether such title came by listing the lands or otherwise. It is equally sure that such subsequently acquired title would not have vested in Hastings by his Sheriff's deed, even if it had passed to Thomas.

The Act of Congress of July 23, 1866, has no effect upon the case, one way or the other. All that it could do, and all that it undertook to do, was to make good to the State the selections which had been illegally made under the laws of the State. It could not and did not undertake to pass any title to the grantees of the State. In its terms and operation it was limited to making good to the State its former grant from Congress. It could have no effect upon the particular land in dispute, even in confirming it to the State, for the reason that prior to 1863 Jackson had made a valid selection of the land in accordance with the State and United States laws, and his selection had been recognized as valid, and acted upon as valid, by both the United States and the State.

SHARPSTEIN, J.:

Thomas, to whose interest the relator has succeeded, attempted in June, 1853, to locate a school-land warrant upon the land in controversy. That attempt was made in the manner prescribed by the Legislature, but was ineffectual because the land was then unsurveyed, and not subject to selection. (*Hastings* v. *Jackson*, 46 Cal. 234.) On the first of the succeeding October, the land was surveyed by the Government of the United States. On the twenty-fourth of December, 1853, "said location was presented to the Register of the United States Land Office of the district wherein the same was located, and was by him duly accepted and approved." This is characterized in *Hastings* v. *Jackson, supra*, as an unauthorized proceeding, which no law, State or Federal, justified. In *Hastings* v. *Devlin*, 40 Cal. 358, the Court said: " We know of no statute of California or of the United States authorizing the performance of the acts set forth in the certificate of Gift, Register of the Land Office at Benicia, of December 24, 1853." It was accordingly held, in *Hastings* v. *Jackson, supra*, that the plaintiff in that case, who is the relator in this proceeding, bore no such relations to the prop-

erty, which was the same in that case as in this, as would en-
title him to call in question the title of the defendants, who
were the same in that case as in this.

In February, 1857, the defendant Jackson located two
school-land warrants upon the land and obtained a patent for
it from the State in March, 1863. The land was not listed
by the United States to this State until February, 1870. In
September, 1871, the United States Land Commissioner can-
celed Jackson's location and sent back to him the warrants
which he had located on the land. This was done after the
land had been listed to the State, and the Commissioner had
no power over the subject after that. (*Hastings* v. *Jackson,
supra.*) It does not appear that anything has transpired
since the commencement of the action of *Hastings* v. *Jackson,
supra*, to change the relations which then existed between
those parties, or to materially affect their rights in the prem-
ises. The grounds upon which the plaintiff in that case
claimed relief are those upon which the plaintiff in this case
claims relief, and the Court, in that case, passed upon all the
questions involved in this, except that it declined to consider
whether the State could avoid its conveyance to Jackson be-
cause the land was not listed to the State when he obtained
the patent for it, or because no notice of his application to
locate his warrants upon the land was published as required
by law, for the reason that the plaintiff was not in a position
to raise those questions.

A point, however, is raised in this case which does not
appear to have been before considered, *i. e.*, that the Act of
Congress of July 23, 1866, entitled "An Act to quiet land
titles in California," made Thomas' premature location valid.
The argument, as we understand it, is that neither the defendant
nor the relator had acquired the title to the land prior to the
passage of that act, and that the equity of the relator, being
older, is the stronger.

It must be admitted, we think, that the patent to Jackson
was prematurely issued. Section 2 of the Act of April 30,
1857, authorizes the issuance of a patent after the certifica-
tion of the land located to the State. But we can not see how
the State could avoid the patent on that ground. After the
land had been certified over to the State, the locator was en-

titled to a patent upon the presentation of a register's certificate, or other satisfactory evidence that his location had been duly made. A valid location might have been made after the land had been surveyed by the United States, and before the land was certified over to the State. That is, valid in the sense that if after the location was made, the land was certified over to the State, the locator would be entitled to a patent. As between him and the State, his right to the land was fixed by a location upon it in the manner prescribed by the laws of the State. But the title remained in the United States until after the certification of the land over to the State. Before that event, a patent from the State would not convey the title, for the obvious reason that the State had none to convey. Still, upon a valid location, made after the survey, and before the certification by the United States, the locator was in a position to demand and compel the issuance of a patent whenever the land so located should be certified over to the State. Therefore, if Jackson's location was a valid one, and no patent had been issued to him, he would be entitled to have one issued to him now. We are, therefore, unable to perceive that the State can avoid the patent heretofore issued, on the ground that it was prematurely issued.

Aside from the claim that the relator acquired a prior and superior right to that of Jackson to the land, we find but one other objection to the validity of his location, and that is, that no notice of his application to the Register of the Land Office for a certificate of location was published, as the law required it should be.

The law, however, does not make the validity of the certificate or patent dependent upon the publication of that notice, which was required to be given in order that adverse claimants might be heard in opposition to the application if they chose to be. But they were not concluded by the granting of the certificate, with or without notice. The State certainly was in no way prejudiced by the failure to publish such notice; and no one can take advantage of the omission without showing that he was in some way prejudiced by it. This objection was not pressed at the argument, and does not appear to be much relied on, although it is adverted to in one of the briefs.

The point upon which the learned counsel for the relator mainly rely is, that the location of Jackson, although made after the survey of the land by the United States, was equally invalid with that of Thomas', which was made before said survey, because both were made before the land had been certified by the United States over to the State, and that neither would be valid except for the Act of Congress of July 23, 1866, entitled "An Act to quiet land titles in California."

If Jackson's location was invalid, Thomas undoubtedly has the superior right to the land under that Act. But we are unable to discover that Jackson's location was invalid. It was not made until after the land had been surveyed, and, as we understand the law, a valid selection and location might then be made, and the person making it be entitled to a patent from the State, whenever the land so selected and located should be certified over to the State by the United States. If this view of the law be correct, it necessarily follows that the Act of Congress last above referred to can not be successfully invoked in behalf of the relator. No one will maintain, we think, that that Act could be so construed as to affect a valid location made prior to its passage. It would cure the invalidity of Thomas' location if no intervening right had accrued in the mean time. But a valid location made between the date of Thomas' location and the passage of the Act would constitute an intervening right, which it was clearly not the intention of Congress to interfere with.

We think that the demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, was properly sustained, and that the judgment should be affirmed.

Judgment affirmed.

MORRISON, C. J., and THORNTON, J., concurred.