THE JEFFERSONVILLE, MADISON, AND INDIANAPOLIS R. R.. Co. *v.* McQUEEN.

TAXATION OF RAILROAD PROPERTY.—*Appeal from Assessment.*—The act in reference to the valuation and taxation of railroad property within this State (3 Ind. Stat. 418) does not provide for any action by the district board of equalization upon the assessment made by the appraisers; and the only appeal authorized is an appeal from the action of the appraisers to the state board of equalization.

SAME.—*Stay of Proceedings.*—Such appeal does not vacate the valuation and assessment made by the county assessors, or suspend proceedings thereon.

SAME.—*State Board of Equalization of 1869 Illegal.*—The state board of equalization for the year 1869 was illegal in its organization; and had it been legally organized, it had no power to act after the time during which it might legally remain in session.

From the Bartholomew Circuit Court.

*S. Stansifer, C. Baker, O. B. Hord,* and *A. W. Hendricks,* for appellant.

*F. T. Hord,* for appellee.

DOWNEY, J.—This action, which was brought by the appellant against the appellee, was instituted for the purpose of enjoining the collection of certain taxes which were charged against the appellant on the tax duplicate in Bartholomew county, and which were about to be collected by the appellee,. as treasurer of the county.

The complaint is as follows : "The plaintiff, for substituted

complaint, says that the auditors of the several counties of the third congressional district met as a district board of equalization at the town of Vernon, the county seat of Jennings county, on the Wednesday after the third Monday of June, 1869, next after the meeting of the county boards of equalization for that year; and at said meeting said district board appraised and fixed the value of plaintiff's road in said Bartholomew county for taxation, for state, county, and township purposes, at five thousand dollars per mile; from which plaintiff appealed to the state board of equalization for the State of Indiana, which convened at the office of the Auditor of State, at Indianapolis, Indiana, on the 5th day of July, 1869; and on the 14th day of July, 1869, said state board of equalization, upon a hearing of said appeal, reduced said appraisement to three thousand five hundred dollars per mile of their said road in said county, of which the auditor of said county was duly notified by the Auditor of State, and no other appraisement of said road for taxation for the years 1871 and 1872 has been had, yet the auditor of said county, without authority for so doing, entered said road for taxation in said county for the years 1871 and 1872, appraised at five thousand dollars per mile; plaintiff says that the number of miles of its road in said county is ————, and appraised for taxation at three thousand five hundred dollars per mile, the taxes thereon for the year 1871, for state, county, and township purposes, at the rate established for said purposes, amounted to two thousand one hundred and six dollars and six cents, which plaintiff paid to the treasurer of said county, before delinquent; and appraised at five thousand dollars per mile, said taxes amounted to two thousand nine hundred and seventy-four and forty-four cents; and the taxes on said road for the purposes aforesaid, in said county, for the year 1872, appraised for taxation at three thousand five hundred dollars per mile, amounted to two thousand three hundred and seventeen dollars and eighty-nine cents, at the rate of taxation for that year, and plaintiff paid the same to the treasurer of said county before delinquent; and there is

now charged to plaintiff, on said tax duplicate, the sum of two thousand one hundred and thirty-nine dollars and one cent, including said difference between the valuation at three thousand five hundred dollars, and five thousand dollars per mile, and the interest and penalty thereon; which said sum said treasurer threatens to levy and collect off the property of the plaintiff, if not restrained from so doing by the court; wherefore plaintiff prays the judge of said court to grant a temporary injunction restraining the said treasurer from collecting, or taking any steps to collect, said sum or any part thereof, until the further order of the court; and, upon a final hearing, plaintiff prays that said injunction be made perpetual, and for all other proper relief."

The complaint was verified by the oath of an agent of the company, and a temporary injunction was granted.

The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action.     The demurrer was overruled, and the defendant excepted.

The defendant then answered, in three paragraphs, as follows:

"1. The defendant for answer herein says that said-pretended state board of equalization, mentioned in the complaint, was not a legal board of equalization for state purposes, and was not composed of delegates chosen by legal district boards of equalization, in this, to wit, that neither of the district boards of equalization was composed of the auditors of the several counties of said districts, as prescribed by law; that the auditors of the fourth congressional district did not meet at the county seat of Decatur county, as required by law, to choose a delegate to such state board, nor did the auditors of the fifth, sixth, seventh, eighth, ninth, and eleventh congressional districts meet at the places required by law, and choose delegates to said state board of equalization; and they say, if any legal delegates or members to said state board of equalization were present at said meeting, such legal members did not compose a majority of the members or delegates required by law, but a

minority thereof, and as such minority they had no power to bind defendants by an order they made, or might make, but their proceedings were void; that said assessment of taxes, with which plaintiff is charged, is the same as made by the officers lawfully authorized so to do, and adopted by the board of equalization for the said Bartholomew county, and as adopted by the district board of equalization of the congressional district, wherein said Bartholomew county was then situate, for said equalization of said taxes; and said amount of taxes so charged to the said plaintiff, and placed on the tax duplicate as aforesaid, includes said taxes so legally assessed as aforesaid, with the penalty imposed by law on such amount of said tax as remains unpaid, and not the tax as equalized by said unlawful state board of equalization; the said valuation and taxation relied on by plaintiff was made by said state board, and by no other.

"2. The defendant, for further answer herein, says that the pretended board of equalization mentioned in the complaint met on Monday, the 5th day of July, 1869, and continued in session until the 16th day of July, 1869, more than ten days altogether; and on said 16th day of July, 1869, being the eleventh day after said 5th day of July, 1869, and the twelfth day of their session, said board made the order of re-appraisement, whereby ——— per cent. was deducted from the valuation of said railroad company in Bartholomew county, Indiana, it being the same order and resolution mentioned in the complaint; and the said resolution and reduction was without authority of law, and is void; that the said taxes charged to the plaintiff are upon the assessment as the same was made by the proper officers duly authorized to originally assess the same, and as approved by the county and congressional boards of equalization, and upon none other, and said taxes now remaining on the tax duplicate are said residue of taxes, and the penalty imposed by law for non-payment thereof; wherefore the defendant demands judgment.

"3. The defendant, for further answer herein, says that under and by virtue of a law passed by the legislature of the

State of Indiana, and duly approved by the Governor thereof,. and which took effect March 18th, 1859 (see 1 G. & H. 321), the district board of equalization was required to meet at certain points, as therein provided; but defendant charges and avers that the auditors of the counties composing the fourth congressional district, at the time of the passage of said law, did not meet at the county seat of Decatur county, and held no meeting there, and the said counties did not choose or select a delegate to said state board, and none was there present; that the auditors of the counties composing the fifth congressional district, at said time, did not meet at the county seat of. Wayne county, and said counties did not select a delegate to said state board; that the auditors of the counties composing the sixth district, at the said time, did not meet at the county seat of Marion county, and said auditors did not select a delegate to said state board; that the auditors of the counties composing the seventh congressional district, at said time, did not meet at the county seat of Vigo county, and they did not select a delegate to attend said state board; the counties composing the eighth congressional district, at said time, did not meet at the county seat of Tippecanoe county, and they did not select a delegate to said state board; the counties composing the ninth congressional district, at said time, did not meet at the county seat of Marshall county; the counties composing the eleventh congressional district did not meet at the county seat of Wabash county; and they did not select a delegate for said districts; and said districts set forth above, composed of said counties then required by law, had no delegates attending said state board; and if there were any legal members attending said state board, they did not compose a majority of the number of delegates required by law, but a minority thereof; they had no power to bind defendant to any order they made, or might make, but their proceedings were void."

The plaintiff demurred to the several paragraphs of the answer. The demurrers were overruled, and the plaintiff excepted.

The plaintiff replied as follows: " That after the passage

of the law providing for district boards of equalization, the legislature of the State of Indiana re-districted the State for congressional purposes, whereby Greensburgh, Decatur county, the place fixed for the meeting of the district board of equalization for the fourth congressional district, was placed in the third congressional district; Centreville, Wayne county, the place fixed for the meeting of the district board for the fifth district, was placed in the fourth congressional district; Indianapolis, Marion county, the place fixed for the meeting of said board for the sixth district, was transferred to the fifth district; Terre Haute, Vigo county, the place fixed by the said law for the meeting of the board for the seventh district, was transferred to the sixth district; Lafayette, Tippecanoe county, the place fixed for the meeting of said board for the eighth district, was transferred to the seventh district; Plymouth, Marshall county, the place fixed for the meeting of said board for the ninth district, was transferred to the eleventh district; and Wabash, Wabash county, the place fixed for the meeting of the board for the eleventh district, was transferred to the eighth district; thereafter, on the 1st day of June, 1869, John D. Evans, Auditor of State, issued a communication, or proclamation, to the several county auditors of the State, wherein and whereby he recommended and directed that the auditors of the counties composing the congressional districts meet at the time required by law, at the following places, which were central points within the several congressional districts as then organized : first district, at the county seat of Gibson county; second district, at the county seat of Floyd county ; third district, at the county seat of Jennings county ; fourth district, at the county seat of Rush county ; fifth district, at the county seat of Marion county ; sixth district, at the county seat of Vigo county ; seventh district, at the county seat of Tippecanoe county ; eighth district, at the county seat of Miami county ; ninth district, at the county seat of Randolph county ; tenth district, at Kendallville, in Noble county ; eleventh district, at the county seat of Porter county; and the county auditors of the said several congressional districts did meet at

the time fixed by law, at the above and foregoing designated: places, that for the third congressional district being the same fixed by the law providing for said district boards; and when so met, and whilst being in session as such boards, they severally elected and appointed a delegate to the said state board of equalization, which met as averred in the complaint, when a committee on credentials of said delegates was appointed by said board, which committee reported to said board, on the 7th day of July, 1869, that they had examined said credentials, and found that the following named county auditors were duly chosen and appointed members of said board:

" 1.  Victor Bisch, of Vanderburgh county, for the first congressional district.

" 2.  James C. O'Brien, of Martin county, for the second congressional district.

" 3.  Richard D. Slater, Jr., of Dearborn county, for the third congressional district.

" 4.  C. B. Bently, of Franklin county, for the fourth congressional district.

" 5.  Eugene Culley, of Brown county, for the fifth congressional district.

" 6.  Charles D. Woolfork, of Lawrence county, for the sixth congressional district.

" 7.  A. J. Castater, of Tippecanoe county, for the seventh congressional district.

" 8.  William Neal, of Grant county, for the eighth congressional district.

" 9.  Henry J. Rudisell, of Allen county, for the ninth congressional district.

" 10.  Francis McCartney, of Steuben county, for the tenth congressional district.

" 11.  A. C. Thompson, of Marshall county, for the eleventh congressional district.

" Which report was concurred in by said board; and said delegates were duly sworn and qualified as such, and thereafter, on the day mentioned in said complaint, reduced said valuation of plaintiff's road, as set forth in said complaint. A

copy of the proceedings of said state board of equalization and a copy of said communication by said Auditor of State to said county auditors are filed herewith, and all the averments of said answer, not herein specially replied to, are denied."

The defendant demurred to the reply, for the reason that it did not state facts sufficient to constitute a reply, and the demurrer was sustained.

The plaintiff excepted to the ruling, and, refusing further to reply, final judgment was rendered for the defendant.

Errors are assigned by the appellant as follows:

1. Overruling the demurrer to the first paragraph of the answer.

2. Overruling the demurrer to the second paragraph of the answer.

3. Overruling the demurrer to the third paragraph of the answer.

4. Sustaining the demurrer to the reply.

5. Finding against the appellant for want of a reply.

6. Dissolving the temporary injunction.

The appellee has pleaded a denial of the errors assigned by the appellant, and has assigned as a cross error the overruling of his demurrer to the complaint.

It appears to be the desire of counsel in this case, that we shall decide the questions argued in the briefs, whether they are presented by the record or not. It is conceded by counsel for the appellant that the case was commenced under a misapprehension as to the state of the law bearing upon it, they supposing that the provisions of the general law touching the assessment of real estate for taxation governed the case, when, in fact, it was governed by the act of 1865 entitled "an act to secure a just valuation and taxation of all railroad property within this State, to legalize the valuation, assessment, adjustment and payment of taxes for such property, made subsequent to the year 1859." 3 Ind. Stat. 418. As the two laws are essentially different, it is not strange that the questions in the case are not well presented by the record. We must, of course, examine the questions with reference to the law of

1865.   The first section requires the company on or before the first Monday in April, 1869, and each year thereafter, in which there shall be a general appraisement of the real property of the State, to " furnish to the appraiser of each county through which their respective roads may run a written statement of the length of the line of such roads within his county, and also a statement of all the machine shops, depots, depot grounds, rolling machinery and other property of such company, used by it in doing the business thereof within this State, and of the gross earnings, and also of the average net earnings of such road over and above the current necessary expenses in transacting its business, and for repairs during the five years immediately preceding such statement which shall be verified by the oath or affirmation of the proper officer of such company making such statement."

The second section provides, that the appraisers of the counties through which the road shall run, if through more than one county, shall, within, etc., meet at, etc., and appraise the value of the road per mile, etc., and apportion the same among the counties.

Section 5 of the act provides, that " if any railroad company shall be dissatisfied with the valuation so made by said county appraisers, such company may, provided they have complied with the provisions of the first section of this act, appeal therefrom to the state board of equalization at its first session thereafter, by serving a written or printed notice, sealed with its corporate seal, on the Auditor of State to that effect, not less than ten days before the meeting of such board, and said board of equalization is hereby empowered to examine the alleged grievances and grant such relief as may be deemed just."

This law does not provide for any action by the district board of equalization upon the assessment made by the appraisers, nor does it provide for an appeal from the district board to the state board of equalization. Hence, when the complaint speaks of the action of the district board of equalization, with reference to this matter, it speaks of something which is not recognized or authorized by the law; and so as to the appeal

from the action of the district board. The only appeal authorized by the act is an appeal from the action of the appraisers to the state board of equalization, according to the fifth section above set forth.

It is said by counsel for appellant : " The complaint, however, is good on demurrer. It is averred that the district board ' appraised and fixed the value of plaintiff's road in said Bartholomew county, for taxation for state, county, and township purposes, at five thousand dollars per mile, from which plaintiff appealed to the state board of equalization for the State of Indiana, which convened at the office of the Auditor of State, at Indianapolis, Indiana, on the 5th day of July, 1869, and on the 14th day of July, 1869, said state board of equalization, upon a hearing of said appeal, reduced said appraisement to three thousand five hundred dollars per mile of their road in said county, of which the auditor of said county was duly notified by the Auditor of State, and no other appraisement of said land for taxation for the years 1871 and 1872 has been had; yet the plaintiff says that the auditor of said county, without authority for so doing, entered said road for taxation in said county for the years 1871 and 1872, appraised at five thousand dollars per mile.' "

Conceding, without deciding that the complaint is good, we will refer to and examine the paragraphs of the answer.

The first paragraph shows, that the pleader was under the same misapprehension, with reference to the law of the case, as that which contributed to shape the complaint. As to the legality of the state board of equalization, which is called in question by the first part of the paragraph, we do not deem it necessary to do more than to say that that body has already been held illegal by this court in two cases : *The State, ex rel. Evans*, v. *McGinnis*, 34 Ind. 452, and *Shoemaker* v. *The Board of Comm'rs, etc.*, 36 Ind. 175.

The paragraph has another allegation, which we think fairly meets the allegation relied upon in the complaint to make it good. That allegation is, " that said assessment of taxes with which the plaintiff is charged is the same as made by the offi-

cers lawfully authorized so to do," etc. What follows with reference to the assessment having been adopted by the board of equalization of Bartholomew county, and the district board of equalization of the congressional district, is immaterial. We regard the first paragraph of the answer as sufficient.

The second paragraph alleges, *inter alia,* that the taxes were levied upon the assessment as the same was made by the proper officers duly authorized to originally assess the same, and that the alleged change made by the state board of equalization was made more than ten days after it met. The state board, had it been legally formed, had no power to act after the time during which it might legally remain in session. This is so decided in *The State, ex rel. Evans,* v. *McGinnis, supra.* We think the second paragraph of the answer a good bar to the action.

The third paragraph shows that a majority of the district boards of equalization failed to meet at the places designated by law ; that they had no delegate attending the meeting of the state board, and that only a minority of the members of the state board were legal members thereof. But the answer does not, in any way, meet the allegation in the complaint, that " no other appraisement of said road for taxation for the years 1871 and 1872 has been made," than as stated in the complaint. For this reason we do not see how it can be sustained. It would seem to be wholly immaterial what action was taken by the state board, if there was no other assessment made than that which is alleged to have been made by the district board of equalization, since, as we have seen, the district board had no power to make any assessment. In our opinion, for this reason, the third paragraph of the answer was bad.

The reply, as may be seen, was to all the paragraphs of the answer. If we concede that the state board of equalization was a legally organized board, or a board *de facto,* as claimed, still, it could not have prolonged its session, as we have seen, beyond the period of ten days ; and, as the second paragraph of the answer alleges that the reduction in the amount of the appraisement was made after the expiration of that time, and

as the reply must be good as to both the first and second paragraphs of the answer, which we have held good, or bad as to both, it seems clear to us, that there was no error in sustaining the demurrer thereto. It makes no attempt to deny or avoid the allegation in the second paragraph of the answer, that the reduction was made after the expiration of ten days from the time of the meeting of the board.

Upon the record, as it stands, the appellee is entitled to an affirmance of the judgment.

The judgment is affirmed, with costs.

## ON PETITION FOR A REHEARING.

BUSKIRK, C. J.—A very able and elaborate brief has been submitted by counsel for appellant, in support of her petition for a rehearing. We are again urged to overrule the case of *The State, ex rel. Evans*, v. *McGinnis*, 34 Ind. 452, which held the state board of equalization of 1869 illegal, and its proceedings void. We are entirely satisfied with the ruling in that case, and the grounds upon which it proceeded. It was followed and adhered to in the subsequent case of *Shoemaker* v. *The Board, etc., of Grant County*, 36 Ind. 175.

The facts in the present case are, in substance, the same as in the *The State, ex rel. Evans*, v. *McGinnis, supra.*

The facts averred in the third paragraph of the answer do not show, in our opinion, that the state board of equalization was a legal body. The matters set up in the reply do not materially affect the question involved or render necessary a different ruling.

It is, in the next place, earnestly insisted, that the appeal by the appellant from the valuation made by the county assessors to the state board of equalization either vacated the valuation and assessment made by the county assessors, or suspended proceedings thereon until there was a decision of such appeal by a valid and legal state board of equalization.

If either proposition is true, the injunction should have been granted. If the appeal vacated the valuation and assessment

made by the county assessors, then there is not now, nor has there been since such appeal was taken, any valid assessment against the appellant. If the appeal, on the other hand, suspended proceedings upon such valuation and assessment until the appeal was decided, then the result and legal effect must be the same, for there has been no decision rendered on such appeal by any legal state board of equalization. In either event, the appellant has not been legally assessed with taxes on such assessment since such appeal was perfected.

The fifth section of the statute of 1865, Acts Special Session, p. 123, gives the right of appeal, and is as follows:

" Sec. 5. If any railroad company shall be dissatisfied with the valuation so made by said county appraisers, such company may, provided they have complied with the provisions of the first section of this act, appeal therefrom to the state board of equalization at its first session thereafter, by serving a written or printed notice, sealed with its corporate seal, on the Auditor of State to that effect, not less than ten days before the meeting of such board, and said board of equalization is hereby empowered to examine the alleged grievances and grant such relief as may be deemed just."

There is no provision in the statute declaring the force and effect of the appeal. It is neither provided that such appeal shall vacate the valuation made by the county appraisers, nor suspend proceedings thereon. The appellant was not required to give any bond. The question was not to be heard *de novo* by the state board of equalization. The board was empowered to examine the alleged grievances, and grant such relief as might be deemed just. The state board was limited and restricted to the examination of alleged grievances. If grievances were shown to exist, then the power was conferred to grant relief, otherwise not. The valuation of the county appraisers remained in force, and the presumption was to be indulged that it was correct; and the grievances were to be alleged and shown by the appellant. The board was empowered simply to examine and review the action of the county appraisers, in the particulars alleged and shown to exist. The

powers of the board were of the same character and extent as those of this court, which sits as a court of error, to correct such errors as are assigned and shown to exist in the proceedings of the lower courts.

In *Young* v. *The State*, 34 Ind. 46, the effect of an appeal was considered and decided, where the court said : "When an appeal is taken and perfected from the judgment or determination of an inferior court to a superior court, as in the case of appeals from the board of commissioners, or from a justice of the peace to the circuit or common pleas court, and the cause or matter is to be tried in the circuit or common pleas court *de novo,* upon the original papers, the appeal operates to suspend or supersede further proceedings under the judgment or determination from which the appeal is taken."

The ruling in the above case has been adhered to in *Lincoln* v. *The State, ex rel. Wood,* 36 Ind. 161, and *Blair* v. *Kilpatrick,* 40 Ind. 312.

Then, as the appeal to the state board was not to be tried *de novo,* upon the original papers, it manifestly results, from the doctrine above stated, that it did not suspend or supersede the valuation made by the county appraisers ; and as the state board of equalization was illegal, and its proceedings void, it follows, that the action and determination of the county appraisers remained in full force and unaffected by such appeal. The Auditor of State had the power to require the appellant to pay taxes upon the valuation made by the county appraisers.

The petition for a rehearing is overruled.