STEWART v. OTOE COUNTY.

### Stewart v. Otoe County.

COUNTY COMMISSIONERS: *Powers.* County commissioners have power to buy a poor-farm for the county, but not to give promissory notes or a mortgage in payment for the same.

*Argument* 1. The statute (*R. S.*, chap. xl. sects. 17–23) authorizes the establishment of a county poorhouse, and the taking of a grant of land therefor, whether the same be donated or purchased, and appropriating not to exceed twenty-five hundred dollars to the purchase. The expression of these powers excludes the authority to give notes and mortgages for deferred payments.

2. A mortgage is but a conditional sale, and may result in divesting the owner of all interest; and yet the statute has authorized the commissioners to sue the property of the county, only upon a vote of a majority of the electors of the county.

This was a petition in error filed to reverse a judgment of the District Court of Otoe County. The facts fully appear in the opinion.

*Hall & Porter*, and *Shambaugh & Richardson*, for plaintiffs in error, insisted, upon the statutes which are set forth in the opinion of the Court, that the commissioners had authority to purchase lands for a poor-farm on time, and secure the deferred payments by note and mortgage; and cited to the point, that municipal corporations, such as counties, cities, &c., created by legislative enactment, and acting within the scope of their authority, are liable on their contracts in the same manner and to the same extent that an individual would be. *Touchard* v. *Touchard*, 5 *Cal.*, 306; *Abbott's Dig. Law of Corps.*, 489, sect. 62; 9 *Exch.*, 55 *and* 84; 4 *Ellis & B.*, 397; 30 *Eng. L. and Eq.*, 120; 22 *N. Y.*, 258; *Abbott's Dig. Law of Corps.*, 870, sects. 2 and 5; *Akin* v. *Blanchard*, 32 *Barbour*, 527; *Abbott's Law of Corps.*, 256, sect. 399.

Counties, and boards of county commissioners, are

*quasi* corporations by reason of their creation by the legislative power of the State. 2 *Bour. Law Dic.*, 413; *Wright's O. Reps.*, 417, 494; 2 *Wallace*, 501; *Angel & Ames on Corps.*, 15.

The power conferred on the commissioners of a county to purchase property for the use of the county carries with it the power to use all means necessary to make the purchase available, and to carry out the intention of the legislature. 5 *O. S.*, 59; 6 *Cal.*, 1; 25 *Ind.*, 536; 1 *Barbour*, 584; 5 *Wis.*, 173; 11 *Wis.*, 306, 334; 10 *Wend.*, 342; *Angel & Ames on Corps.*, 16 and 17, sect. 111.

A power to purchase carries with it a power to purchase on credit, and give acknowledgments therefor. 14 *N. Y.*, 356; 10 *N. Y.* (6 *Selden*), 449.

A contract made by a corporation must be enforced as against it, unless it is made out that the act conferring certain powers on such corporation clearly prohibits such contract. *Angel & Ames on Corps.*, 237, sect. 256–357.

*D. Gantt*, for the defendant, insisted that the county commissioners had no authority in law to make such contract as that alleged in plaintiff's petition; and that, even if made with all the necessary formalities of a contract for the sale of real estate, yet it is a nullity; that the county is a *quasi* corporation, and the commissioners can exercise no powers except such as are delegated to them, and can make no contract binding on the county except such as they are expressly authorized to make by statutory law.

I. Statutes *in pari materia* are to be construed together. The statutory provisions, the construction of which are involved in the determination of this case, are found in the seventeenth, eighteenth, nineteenth, and

STEWART *v.* OTOE COUNTY.

twenty-third sections of chap. xl., sect. 2 of chap. v., and the ninth chapter of the *Revised Code of Nebraska*, approved Feb. 12, 1866. All of these sections and chapters constitute only parts of one entire act; and to obtain a correct interpretation of the powers, duties, and limitations of the board of county commissioners, in respect to the purchase of a poor-farm, all these several parts of this act must be taken together as one law: although they form several parts of the same act, yet they are *in pari materia*, and must be construed together. *Wakefield* v. *Phillips*, 3 *N. H.*, 295 ; *Ryegate* v. *Woodsboro*, 30 *Verm.*, 746 ; *Green* v. *Weller*, 32 *Miss.*, 650 ; *Pennington* v. *Cox*, 2 *Cranch*, 52 ; *Ogden* v. *Strong*, 2 *Paine C. C.*, 584 ; *U. S.* v. *Fisher*, 2 *Cranch*, 386 ; *Merrill* v. *Gorham*, 6 *Cala.*, 41.

And it is said to be a settled rule of interpretation, that the application of words of an act may be enlarged or restrained to bring the operation of the act within the intention of the legislature, when violence will not be done, by such interpretation, to the language of the act. *Maxwell* v. *Collins*, 8 *Ind.*, 38.

II. Counties are only *quasi* corporations, and have such powers only as are expressly granted by statute.

At common law, a county cannot sue or be sued ; and statutes authorizing suits by or against them must be strictly complied with. *Schuyler* v. *Mercer & Co.*, 4 *Gilm.*, 20 ; *Lyell* v. *St. Clair*, 3 *McLean*, 580.

The people of a county have no capacity to take by grant ; and it is a settled rule of the common law, that communities not incorporated cannot purchase and take loans by succession, gift, grant, devise, or purchase. *Jackson* v. *Cory*, 8 *John.*, 588. See also *Co. Litt.*, 3, *a ;* 10 *Co.*, 26, *b ; Com. Dig.*, title *Capacity*, *B*, 1.

But, under statutory provisions by which counties are made municipal organizations, they are only considered

*quasi* corporations. *Vankirk* v. *Clark*, 16 *S. & R.*, 289 ; *Irwin* v. *Commissioners*, 1 *S. & R.*, 505 ; *Lyon* v. *Adams*, 4 *S. & R.*, 443 ; *Price* v. *Sacramento*, 6 *Cal.*, 254 ; *Treadwell* v. *Commissioners*, 10 *Ohio* (*N. S.*), 181 ; *Hunter* v. *Commissioners*, 10 *Ohio St.*, 520.

And a grant of powers to such a corporation must be *strictly* construed. When acting under a special power, it must act strictly on the conditions under which it is given. *Treadwell* v. *Commissioners*, 10 *Ohio* (*N. S.*), 183 ; *Manuel* v. *Manuel*, 13 *do.*, 458.

III. The Board of County Commissioners can exercise no powers except such as are especially granted ; and the grant must be strictly construed. On these points the authorities are numerous.

1. If a county authorized by law to appoint a commissioner to build a bridge according to a plan, and with materials directed by the County Court, appoint one with authority to build one according to such plan as he shall deem proper, the appointment is illegal, and his acts are not binding on the county. *County of St. Louis* v. *Cleland*, 4 *Mis.*, 84.

Under an act authorizing the relocation of the seat of justice of a county, the Board of Commissioners appointed A, with two other persons, to superintend the erection of public buildings. *Held*, that the county was not liable to A for any services rendered by him under said appointment. *Hoover* v. *Hoover*, 5 *Blackf.*, 182.

Commissioners were authorized to establish roads of a width not exceeding forty feet. An order by them establishing a road of undefined width is void. *White* v. *Conover*, 5 *Blackf.*, 462.

The hire of carriages by the sheriff, under the direction of the circuit judge, to convey the grand jurors to the county jail to inspect it, is no charge against the county, although the commissioners for many years past

have allowed such items. *Van Epes* v. *Commissioners, Court of Mobile*, 25 *Ala.*, 460.

Work was done in repairing a bridge under a contract with a board of supervisors, not in compliance with the regulations laid down in the act concerning roads and highways. *Held*, that the contract was not binding on the county, and that the contractor could not recover on it, and was properly nonsuited. *Murphy* v. *Napa Co.*, 20 *Cal.*, 497.

Boards of county commissioners are courts of limited and special jurisdiction; and the records must show, to make them evidence of the validity of the acts of the courts, that the requisitions of the statutes under which they acted were complied with so far as necessary to give them jurisdiction. *Rhode* v. *Davis*, 2 *Cart.* (*Ind.*), 53.

Again: county courts being courts of limited jurisdiction, it must appear of record, in all cases, that they had jurisdiction of the case decided by them. *Frees* v. *Ford*, 2 *Selden* (*N. Y.*), 176.

2. The county cannot create a debt, except by an express power granted.

The supervisors cannot create a debt or liability on the part of the county for any purpose, except as provided by law. *Foster* v. *Coleman*, 10 *Cal.*, 278.

The county auditor has no power to issue a bill of exchange, nor to give his warrant in the form and qualities of such instrument. *Dana* v. *San Francisco*, 19 *Cal.*, 486.

3. Their contracts must be made at their regular meetings.

An agreement of county commissioners, not made at a regular session of the board, but in vacation, is not binding on the county. *Campbell* v. *Breckenridge*, 8 *Blackf.*, 471.

.STEWART *v.* OTOE COUNTY.

.A contract made by county commissioners, to be binding on the county, must be made by the board at a regular session of their court. *Rhodes* v. *Davis*, 2 *Carter (Ind.)*, 53.

IV. The statutes of this State do not authorize the purchase of a poor-farm on credit, and giving of notes and a mortgage to secure deferred payments.

LAKE, J.

The plaintiff brought his action in the Court below to recover damages claimed by him by reason of the breach of an alleged contract between him and the county commissioners, whereby they agreed to purchase of him certain premises to be used as a poor-farm.

The petition shows that the commissioners advertised for bids for a poor-farm, in which persons offering the same were requested to state the number of acres, the location, state of improvements, timber and water if any, conditions of sale, and price per acre.

In pursuance of this notice, the plaintiff offered his farm, consisting of three hundred and twenty acres, for the price of twelve thousand dollars, of which two thousand dollars were to be paid down, and the remainder in annual payments of two thousand dollars, with interest, until the whole amount should be paid, — the payments to be secured by mortgage upon the premises.

The bid was accepted by the county commissioners on the fifth day of January; at which time it was also agreed that the annual payments of principal and interest should be made on the first day of March in each year, and that the plaintiff should make his deed, and give possession of the premises, on the first day of March, 1870.

On the first day of March, 1870, the plaintiff exe-

STEWART *v.* OTOE COUNTY.

cuted his deed, and tendered it, together with the possession of the premises, to the commissioners, and demanded a performance of the contract on their part, which was refused; in consequence of which he was damaged to the amount of several hundred dollars.

To the petition the defendant filed a general demurrer, which was sustained by the District Court; and the only question now presented for our consideration is, Does the petition allege facts sufficient to constitute a course of action?

First, then, had the county commissioners authority to bind the county of Otoe in a contract of the character of the one set forth? If they had, the ruling of the District Court upon the demurrer cannot be sustained.

That the county commissioners may purchase a poorfarm for the county is clear; but can they execute notes and mortgage in the name of the county in payment of the purchase-money? This the contract stipulated should be done; and, because it was not done, this suit was brought.

There is no authority of law for the county commissioners to bind the county in the manner contemplated. They cannot give a promissory note, nor can they mortgage the property of the county. Should they formally do so, their action would be a nullity. In the purchase of land for a poor-farm, the authority of the commissioners of a county is very clearly set forth. The mode of raising the money, and paying it over, are all definitely stated. These statutes set a limit, beyond which they cannot go. They are a guide, not only to the commissioners, but equally so to all persons dealing with them, who must see to it that their contracts are within the boundaries thus described. To maintain an action against a county upon a contract, it must be

shown, that, in respect to both its subject-matter and terms, it is within the statute.

Sect. 17, chap. xl., provides "that the county commissioners in each county are authorized, whenever they see fit to do so, to establish a poorhouse;" and the next section provides that "they may take to the county, by grant, devise, or purchase, any tract of land not exceeding six hundred and forty acres for the purposes of said poorhouse."

Now, having authorized the purchase of the land for the purposes of a poorhouse, how may they pay for it? Sect. 19 of said chapter declares that said commissioners are hereby empowered to receive donations to aid in the establishment of such poorhouse; and also empowered from time to time, as they shall see fit, to levy and collect a tax, not exceeding one per cent, on the taxable property in the county, and to appropriate the same to the purchase of land, not exceeding the aforesaid six hundred and forty acres; and to erect and furnish buildings suitable for a poorhouse, and to put into operation and to defray the actual expenses of said poorhouse should the labor of the inmates be inadequate thereto. By sect. 23 of the same chapter, the commissioners are authorized, if they deem it to be for the interest of the county, to appropriate out of any other money belonging to the county any sum not exceeding two thousand five hundred dollars, for the purpose of purchasing a farm, and erecting thereon suitable buildings, as contemplated in the sections before referred to.

Here we find the authority, and indeed the only authority, for the purchase, and payment of money for, a "poor-farm" by the county commissioners; and here, too, are specially designated the money that may be used for that purpose, together with the mode of raising it. But there is not one word about mortgaging the

STEWART *v.* OTOE COUNTY.

property of the county to secure the payment of the purchase-money at a given time. The statutes provide the only security that can be given. The public faith is pledged; and a tax, not exceeding one per cent, may be levied upon all the taxable property of the county annually, and, when collected, paid to the person entitled thereto by an order upon the treasurer of the county, payable out of that special fund. If the commissioners could pledge the property of the county by mortgage, it would follow, that, if the debt secured were not paid at its maturity, an action could be at once instituted to foreclose the equity of redemption, subjecting the county necessarily to expensive litigation. This result was never intended by the legislature; and therefore the authority to pledge the property of the county as security for the payment of its indebtedness has been most wisely withheld from its agents.

A mortgage of property is but a conditional sale, and may result in a complete divestment of all the owner's interest therein: and not only is there no express authority given in our statutes to the county commissioners to mortgage the real property of the county, but their right to sell or transfer it in any manner is most carefully guarded; for in no case can they do so unless first authorized by a majority vote of the electors of the county, as provided in sect. 16, chap. ix., of the Revised Statutes.

We conclude, therefore, that the contract upon which the breach is assigned was not within the statute; that the county of Otoe was not bound by its terms; and that the refusal of the county commissioners to abide by its provisions furnishes no cause of action to the plaintiff.

The ruling of the District Court upon the demurrer was correct; and its judgment must be affirmed.

Judgment affirmed.