McCrossen vs. Lincoln County.

*February 3 — February 20, 1883.*

COUNTIES: SALE OF CHATTELS. *(1) How property of county may be purchased. (2) Case stated.*

1. The property of a county can be purchased only through the board of supervisors, except in cases where some other body or officer is authorized to make the sale.

2. A county board adopted a resolution that certain railroad stock "is hereby sold to H. for the sum of $1,350," and a second resolution appropriating "the proceeds of the sale" to several towns. H. immediately drew his check for $1,350, payable to the county clerk, and delivered it to him at the office of H., a short distance from the place of meeting of the board. Shortly after such delivery, and on the same day, the board adopted a resolution rescinding "the order selling the stock." There was no evidence of any previous offer by H. *to the county board* to purchase the stock, or that the board ever directed the clerk to accept the check or receive any money from H. in payment therefor, or that H. notified *the board* in any way, after the adoption of the first resolution, that he accepted the terms of the sale. *Held:*

(1) There was no perfected agreement of sale, and the board might withdraw the *offer* made by its first resolution.

(2) It appearing that the county clerk still holds the money received by him on the check given by H., the assignee of the latter has no claim on the county therefor.

APPEAL from the Circuit Court for *Waupaca* County.

The facts are sufficiently stated in the opinion. The plaintiff appealed from a judgment in favor of the defendant.

*H. H. Grace,* for the appellant.

For the respondent there was a brief by *Hoyt & Helms,* with *Hetzel & Canon,* of counsel, and oral argument by *Mr. Hetzel.*

TAYLOR, J. This action was brought by the appellant, as assignee of one H. B. Huntington, to recover from the county of *Lincoln* the value of certain railroad stock which he

claims to have purchased from said county, which, upon demand, the county refused to deliver to him, and which, in fact, said county afterwards sold and delivered to another person. The plaintiff claims that the contract of purchase was made with the county board of supervisors of *Lincoln* county, at a special meeting of said board, held on the 26th day of May, 1880. The proceedings of the board of supervisors on that day in relation to this matter, as appears from their records, are as follows:

"*Resolved*, that the undivided Wisconsin Valley Railroad stock belonging to *Lincoln* county, and now held by Marathon county, is hereby sold to H. B. Huntington for the sum of $1,350, and resolutions adopted previous to this, authorizing T. B. Scott and H. Rusch to sell said railroad stock, are hereby rescinded."

"*Resolved*, that the proceeds of the sale of the Wisconsin Valley Railroad stock made this day to H. B. Huntington, for $1,350, be and is hereby appropriated to the several towns as follows: Town of Pine River, $500; town of Ackley, $500; town of Jenny, $200; Corning, $150. And the following persons are hereby appointed as commissioners to lay out said money on the different county roads in said towns, to wit: Pine River, William Bessey; Ackley, E. Loyd; Jenny, Spencer Wiley; Corning, Carl Haffeman."

"*Resolved*, by the board, that the order passed this day, selling the stock of the Wisconsin Valley Railroad belonging to the county of *Lincoln*, and now held by Marathon county, to H. B. Huntington, be, and the same is hereby, rescinded, and the sale of said stock will be advertised."

"*Resolved*, that the county clerk be, and he is hereby, instructed to give notice, by publishing the same in the Lincoln County *Advocate* and Northern Wisconsin *News*, that said stock will be sold one week from date to the highest bidder for cash."

These resolutions were all passed on the same day, in the forenoon of said day, and in the order above stated.

The parol evidence shows that almost immediately after the first resolution was adopted, Huntington drew his check upon Silverthorn & Plumer, payable to Herman Rusch, county clerk. The following is a copy of the check:

"$1,350.                                    WAUSAU, May 26, 1880.

"*Silverthorn & Plumer:* Pay to Herman Rusch, county clerk of *Lincoln* county, or order, $1,350.

[Signed]                            "H. B. HUNTINGTON."

This check was handed to the county clerk at the office of H. B. Huntington, about twenty rods from the place where the board was in session, and when the clerk returned to where the board was sitting, the board was upon the point of adopting the resolution rescinding the resolution to sell to Huntington. There is no evidence tending to show that the board ever directed the county clerk to accept such check from Huntington in payment for said stock, or to receive any money from him in payment thereof. The next day, and after the board had rescinded the resolution of sale, the county clerk received the money on said check, but he never offered to pay it to the treasurer of *Lincoln* county, and has always kept the same in his possession. There is no evidence that Huntington ever made any proposition to the county board to purchase said stock, nor that he ever offered to purchase the same from said board for the sum of $1,350, or for any other sum, unless the resolution passed by the board is itself evidence of the fact that such proposition was made. Upon this state of the evidence, admitting that the county of *Lincoln* then had such an interest in said stock as it could sell, and waiving all question as to the regularity of the special meeting of the board then being held, we are of the opinion that there was no perfected agreement of sale between the county and Huntington shown. There is no evidence that Huntington notified the board in any way, after the resolution was adopted, that he accepted the terms of sale, and was ready and willing to pay the amount specified in the resolution. The delivery of his check to the

county clerk was, so far as the record shows, without any direction from the board, nor is there any evidence that the clerk had any authority from the board of supervisors to receive the check or money from Huntington in payment for said stock. So far as the county board was concerned, it is very clear that Huntington might have withdrawn his check or refused to pay it, and upon the evidence in this record the county of *Lincoln* would have been powerless to enforce the payment of the $1,350 for the stock.

It is urged by the learned counsel for the appellant that the resolution of the board appropriating this money to the several towns is evidence tending to show that the clerk was authorized to receive the check or money from Huntington on behalf of the county. We think that resolution has little force as evidence of such authority. It is to be presumed that the board expected the proposition to sell would be accepted, and that the money would come into the treasury within a short time, and so, in anticipation, made disposition of the same. There having been no acceptance of the proposition to sell made by the board, and no payment of money or other valuable thing by the proposed purchaser to any one authorized to receive such pay on behalf of the county, it is undisputed that the county board might withdraw the offer to sell, and that was in fact done, as the records and proofs show, within a very few hours at most, and before the adjournment of the board at noon of the same day.

We do not overlook the fact that the learned circuit judge has found, as a fact proved, "that the resolution of sale of stock was made as an acceptance of an offer of said Huntington of $1,350 therefor." This finding was excepted to by the defendant, and it may take advantage of that exception upon this appeal to sustain the judgment in its favor. *Maxwell v. Hartmann,* 50 Wis., 660. We find no evidence in the record to sustain this finding. It is well said by the learned counsel for the respondent that a mere knowledge on the

part of the members of the board that Huntington was willing to pay such sum for the stock is not tantamount to an offer to do so, and which would bind him if accepted by the board. Had it been shown that Huntington had stated to each individual member of the board, out of session, that he would give that sum for the stock, we think he would not be bound by such offer. To bind him by an acceptance, the offer to purchase must be made to the board while in session as a board. A party purchasing the property of a county can do so only through the board of supervisors, except in cases where some other body or officer is expressly authorized to sell such property. In this case there is no pretense that the stock held by the county of *Lincoln* could be sold by any officer or authority of the county except the board of supervisors. All offers to purchase and all contracts of purchase must be made to and with the county board, in order to bind either the county or the person offering to make the purchase.

There being no evidence in the case showing that Huntington ever made an offer to the board of supervisors of the county to purchase said stock for the sum of $1,350, or for any other sum, we think the learned circuit judge erred in finding that the resolution for the sale of the stock was made as an acceptance of an offer of Huntington to buy it for the sum of $1,350. We hold that the record only shows an offer on the part of the county board to sell the stock to Huntington for the sum of $1,350, and that there is no evidence showing that Huntington accepted the offer so made, by payment to the county or to its authorized agent, or by offering to pay any money on such offer of sale, or that he in any way notified the said board that he accepted such offer to sell, until after said board had withdrawn its offer of sale by a resolution rescinding such offer.

We also hold that there is no evidence showing that the money received by the county clerk upon the check given to

him by Huntington ever came into the treasury of the county, but, on the contrary, the evidence shows that the county clerk still holds the same in his possession for the appellant. He has, therefore, no claim on the county for the money so received by the county clerk. See *Smith v. Barron*, 44 Wis., 686.

We have purposely declined to give any opinion upon the question of the regularity of the special meeting of the county board at which the alleged sale was made, and upon the question of the power of the county of *Lincoln* to sell its interest in the stock held by the county of Marathon, until after a division thereof had been made as provided by law, as it is apparent from the record that these questions may affect the rights and interests of other parties not before the court upon this appeal.

*By the Court.*— The judgment of the circuit court is affirmed.