Filed Oct. 29, 1885.

---

No. 11,294.

## PLATTER v. THE BOARD OF COMMISSIONERS OF ELKHART COUNTY.

COUNTY COMMISSIONERS.—*Power to Change Location of County Institutions.*—The board of county commissioners has power to change the location of county institutions and to do all acts necessary to effect the change, and such power is a continuing one, not exhausted by a single exercise.

SAME.—*Order of Discontinuance Before Selling County Poor Asylum.*—It is not necessary for the board to pass an order formally discontinuing the county asylum for the poor prior to selling such asylum, for the purpose of locating it elsewhere.

SAME.—*Power to Sell County Property.*—Such board may sell property when in its judgment it is no longer required for county purposes.

SAME.—*Ministerial Act.—Discretionary Power.—Special Session.*—An order for the sale of county property is a ministerial act, calling into exercise

Platter *v.* The Board of Commissioners of Elkhart County.

the discretionary powers of the board, and such order may be made at a special session and executed when the board is not in session.

SAME.—*Delegating to Agent Power to Sell.*—The mere act of selling may be done by the county auditor at the direction of the board.

SAME.—*No Appeal from Ministerial Act.*—Where the board exercises judicial functions in adversary proceedings, involving private rights, there is a right of appeal, but such right does not exist where such board acts in a purely ministerial or administrative capacity.

SAME.—*Exercise of Statutory Power.*—Where the statute prescribes the mode of exercising a power, that mode must be adopted.

SAME.—*Notice of Sale.*—*Terms.*—*Price of Property Must be Fixed by Board.*— Under the statute providing for the sale of county property by the board of commissioners, the notice of sale will be insufficient as to the terms upon which it is to be made, if it does not name the minimum price which it is the duty of the board to fix upon such property.

SAME.—*Kind of Security Must be Specified.*—*"Approved Security."*—The notice of sale must also specifically state the kind of security which the purchaser will be required to give. It is not sufficient to designate it as a note with " approved security."

SAME.—*Ratification.*—An act performed by a public corporation in violation of the terms of a statute can not be ratified.

SAME.—*Estoppel of Public Officers.*—One who deals with public officers with limited statutory powers is bound to ascertain the scope of their authority, and he can not found an estoppel upon acts done by them in excess of their authority.

SAME.—Where both the parties to a transaction have equal knowledge, or means of knowledge of all the facts, there can be no valid estoppel.

SAME.—*Action by Board to Annul Sale Made by Previous Board.*—An action may be maintained by a board of commissioners to set aside an invalid sale of county property made by a previous board.

PRACTICE.—*Finding by Jury in Equity Case.*—*Venire de Novo.*—In cases of equity jurisdiction, properly triable by the court, the finding of the jury will be treated as advisory unless it appears that the parties and the court treated the case as an action at law, and its form and contents are not material unless adopted by the court, and a motion for a *venire de novo* is not proper.

SAME.—*Province of Court.*—Although a finding has been made by a jury in a case properly triable by the court, the ultimate decision of all questions of fact, as well as of law, must be made by the court, and where it renders judgment according to the merits of the case, there can be no reversal.

SAME.—*Evidence.*—*Harmless Error.*—The admission of incompetent but harmless evidence is not available for the reversal of a judgment.

TENDER.—*Refusal to Hear Tender.*—One who, by his own conduct, prevents

a full tender being made to him, can not afterwards complain that the tender made was not sufficiently specific.

From the LaGrange Circuit Court.

*R. M. Johnson, J. Morris, H. D. Wilson, W. J. Davis, J. D. Ferrall, E. G. Herr* and *A. A. Chapin,* for appellant.

*J. H. Baker, J. A. S. Mitchell, F. E. Baker* and *W. L. Stonex,* for appellee.

ELLIOTT, J.—The material facts alleged in the complaint of the appellee, exhibited in a condensed form, are these : In 1853 the county of Elkhart became the owner of a tract of land, and remained the owner of it from that time until 1882, using it during all that period as a poor farm, as it is called, for the maintenance of the paupers of the county. In February, 1883, the board were convened in special session, having been called together by a summons issued by the auditor, and on that day adopted the following preamble and resolutions :

· " Whereas the board did, at the December term, 1881, to wit, December 7th, determine that it was for the best interests of Elkhart county to sell said poor farm, with the purpose in view of relocating said poor farm in a more eligible place; and whereas said board did on said day, in pursuance of said determination, direct said auditor to give notice by advertisement in the public newspapers in the county that said farm was for sale, and that in pursuance of said order and direction said auditor did thereafter give notice by publication in three newspapers of general circulation, printed and published in Elkhart county, for three successive weeks, that said poor farm was for sale and awaiting bids for the purchase thereof; and whereas this board did again convene on the 11th, 12th and 13th days of January, 1882, for the purpose of further considering the matter of the proposed sale of said poor farm, and this board did, on the 12th day of January, 1882, while so in session, in good faith attempt to sell and convey, and did make, execute and deliver a deed for said farm to Wil-

liam D. Platter, at and for the agreed purchase-price of fourteen thousand dollars, which sum said Platter has paid into the county treasury; and whereas complaints have been made that said farm above described was sold for a sum less than its real value, and that notice of the time, place and terms of the sale thereof was not given for the requisite time as by law in such cases made and provided, and that said sale was at private sale, instead of by public sale; and whereas this board is of the opinion that it is and will be for the best interests of Elkhart county that the asylum for the poor of Elkhart county shall be discontinued at and on the above described land, and that said land should be sold at public sale, and that a sale thereof should be had at the earliest practicable day; wherefore, in order to effectuate and carry out said determination, and that a perfect title and legal sale may be made of said poor farm, it is therefore ordered that the above described real estate be sold at public auction at the door of the court-house, in Elkhart county, Indiana, on the 20th day of April, 1882, between the hours of ten o'clock A. M. and two o'clock P. M. of said day, on the following terms, to wit: One-half of the purchase-price will be required cash on the day of sale, and the residue in one year from date of sale evidenced by note of purchaser, with six per cent. interest from date, waiving valuation and appraisement laws and attorneys' fees, with approved security.

"And it is further ordered that the auditor of Elkhart county cause notice of said sale to be given by publication in the Goshen Times, the Independent, and the Elkhart County Journal and the Monitor, each a weekly newspaper of general circulation, published and printed in Elkhart county, in each issue of said papers until the 20th day of April, 1882, and a copy of the notice of such sale be posted in five public places in said county, to wit: One at the door of the court-house, one each at the post-offices in Goshen, Elkhart and Middlebury, and one at the county asylum; and the board further

orders that the county auditor, either in person or by deputy, act as auctioneer of said sale."

That pursuant to such order the county auditor advertised the sale of such poor farm by publishing for sixty days immediately prior to the 20th day of April, 1882, the following notice:

"NOTICE OF SALE OF ELKHART COUNTY POOR FARM.

"Notice is hereby given that the board of commissioners of Elkhart county, Indiana, will offer at public auction, at the door of the court-house of said county, on Thursday, the 20th day of April, A. D. 1882, between the hours of ten o'clock A. M. and two o'clock P. M. of said day, the farm known as the poor farm of said county, described as follows, to wit:

"The southeast quarter of the southwest quarter, and the south half of the southeast quarter, of section twenty-five (25), in township thirty-six (36) north, and of range six (6) east, and the southwest quarter of the southwest quarter of section thirty (30), in township thirty-six (36) north, and of range seven (7) east, in said county, containing 160 acres.

"TERMS:—The one-half of the purchase-price will be required in cash on day of sale, and the residue in one year from the day of sale, the purchaser giving his note therefor with 6 per cent. interest, waiving valuation and appraisement laws, and attorneys' fees, with approved security, but the board reserves the right to retain possession of the asylum buildings until they can make suitable arrangements for the keeping of the poor elsewhere. By order of the board of commissioners, at special session, February 15th, 1882."

The board at the same special session ordered "that the auditor, either in person or by deputy, act as auctioneer of said sale." On the 20th day of April, 1882, at one o'clock in the afternoon, when the board was not in session, and could not be in session except upon the summons of the auditor, that officer read in the hearing of a number of persons then convened the notice of sale, and then and there stated that he would sell the poor farm to the highest and best bidder on

the terms specified in the notice; no person made any bid except the appellant, and he only made one bid of twelve thousand dollars, whereupon the auditor declared the farm sold to him. The auditor accepted from the appellant as purchase-money six thousand dollars, and a note signed by him alone, and also received a mortgage on the farm to secure the note. On the 20th day of April, 1882, the board convened in special session upon the summons of the auditor, and received from the latter a report of the sale, as follows:

"The undersigned, auditor of said county, would most respectfully report to your honorable board, that in obedience to the order of this board made February 15th, 1882, he caused to be published in each of the following weekly newspapers, of general circulation in said county to wit, the Goshen Times and the Independent, of Goshen, and the Elkhart Review and the Elkhart Monitor, of Elkhart, the notice, a copy of which is filed herewith and made a part hereof, each week from said 15th day of February to this date, the first publication thereof being in the Goshen Times of February 16th, 1882, and by posting said notice in five public places in said county, as per proof of said posting filed herewith by the affidavit of the sheriff of said county, that by virtue and in pursuance of said order said board would sell to the highest bidder, on the terms mentioned in said notice, the following real estate, situated in said county and State, and described as follows, to wit: The southeast quarter of the southwest quarter, and the south half of the southeast quarter, of section twenty-five (25), in township thirty-six (36) north, and of range six (6) east, and the southwest quarter of the southwest quarter of section thirty (30), in township thirty-six (36) north, and of range seven (7) east, containing 160 acres.

"That, in pursuance of said order and notice, I did, between the hours of ten o'clock A. M. and two o'clock P. M. of the 20th day of April, 1882, as auctioneer, offer for sale at public auction said above described real estate at the door of

the court-house, in said county, to the highest and best bidder, on the terms set forth in said notice, and William D. Platter having bid therefor the sum of $12,000, the said realty was then and there openly struck off and sold to said William D. Platter for said sum of $12,000, that being the highest and best bid therefor, and said William D. Platter being the highest and best bidder therefor, though more than fifty persons, resident taxpayers and citizens of said county were present during all the time of said sale, said William D. Platter paid down the one-half of said sum, to wit, $6,000 cash, and executed his note secured by mortgage on said realty for the balance of said purchase-price, to wit, $6,000, bearing interest from date, which note, mortgage and money so paid I now bring to said board. Said sale was in all things in accordance with said order and notice, and in said sale the possession and use of the asylum buildings on said premises were reserved for the purpose of the poor until suitable arrangements can be made for keeping them elsewhere."

The board approved the report, confirmed the sale, received the money tendered by Platter, and accepted his note and mortgage. Immediately upon the making of the order approving the sale, Milo S. Hascall and John H. Violett prayed an appeal and filed the proper bond. Notwithstanding the prayer of the appeal and the filing of the bond, the board executed a deed to Platter. Possession of the farm was taken by Platter, but before this action was brought a rescission was demanded, money, note and mortgage tendered back to him, and all things done by the county to place him *in statu quo.*

After the consummation of the sale to the appellant, the board of commissioners ordered notices to be published inviting proposals for the sale to the county of land suitable for a poor farm, notices were published, proposals were submitted, among others, one from Platter offering a farm owned by him for the price of $30,000. The proposal of appellant was rejected, but four days afterwards, without further no-

tice being published, the proposal was acted upon, and an order made for the purchase of the farm at the price of $29,566. From this order an appeal was prayed by a number of taxpayers. Notwithstanding this prayer, the board received a deed from Platter and took possession of the land. Upon the question of selling, as well as upon the question of buying, there was one negative and two affirmative votes. The board was changed in March, 1883, by a new member coming into office, and within seven days after his accession to office, an order rescinding the orders relative to the sale and purchase was made, and proper offer and demand of rescission were made by order of the board. The prayer of the complaint is that the deed to Platter be set aside, and that of the county to him be annulled.

The complaint assigns as the reasons supporting the attack upon the validity of the proceedings the following:

"*First.* That the poor farm having been purchased by order of the board of commissioners in the year 1853, and an asylum for the poor having been duly organized and established and maintained thereon from that time to the date of the pretended sale, the commissioners had no power to sell said farm and the asylum thereon erected, without first passing an order that the asylum should be discontinued.

"*Second.* That the order and notice for the sale, having fixed the time for the sale by the commissioners on a date when by law they could not be in session pursuant to law, were void, and that the sale having been made at a time when they were not in regular session, in pursuance of such void notice, was void.

"*Third.* That the terms of sale, as fixed by the order and notice, were too uncertain, and that the sale was made in violation of the terms as set forth in the order and notice, and that it was, therefore, void.

"*Fourth.* That the sale could only be made by the board of commissioners when lawfully in session; that the board was not in session at the time the sale was made; that the

board had not attempted to delegate their power to sell to an agent, nor could they if they had so attempted; and that the sale, having been made at the court-house door when the members of the board were simply standing by as individuals, and not in session, was void.

"*Fifth.* That the conveyance of the farm to the appellant was void, for the reason that it was made after an appeal had been taken and allowed from the order of the board confirming the sale, which appeal was still pending at the time, and which suspended the power of the commissioners to proceed until it was disposed of."

The reason assigned for the invalidity of the order of the purchase from Platter is substantially this:

The purchase from Platter is void, because there had been no valid sale of the old farm, as he well knew.

The case has been argued orally and in written and printed briefs, these latter consisting of several hundred pages, and we have given it much consideration.

The first ground assigned in support of the attack upon the validity of the proceedings ordering the sale of the poor farm is not tenable. It was not necessary for the board of commissioners to formally order the discontinuance of the asylum originally established. The order for the purchase of a farm to which the board proposed to remove the asylum was a sufficient declaration of its judgment upon the question of a removal. Where the governing body of a county or a city makes an order in a matter over which it has jurisdiction, it is not necessary to declare the purpose of making it, nor to formally state the reasons for the order, nor to formally rescind or abrogate former orders. It is enough in such cases to make the order, without any formal statement of its purpose or effect, and the courts will determine its legal effect and ascertain its purpose. In determining to buy a farm for the location of the asylum, the board of commissioners necessarily determined to change its location. Where a judgment of a tribunal is involved in its order, it is not necessary to

expressly state the grounds upon which it proceeds. *Board, etc., v. Hall,* 70 Ind. 469; Dillon Mun. Corp. (3d ed.), section 318, auth. n.

In determining to purchase a new location for the poor farm, the board necessarily determined the question of changing the old location, but in arriving at this conclusion it did not determine to discontinue the asylum for the poor—it simply changed its location. There is no provision in the statute inhibiting the board of commissioners from changing the location of county institutions.

The law commits to the board of commissioners very extensive powers over the property, finances and institutions of the county. In *State, ex rel., v. Clark,* 4 Ind. 315, it was said of the board: "It has the care of the property of the county, as well as its supervision and management." The Supreme Court of the United States said: "It is for all financial and ministerial purposes the county." *Levy Court v. Coroner,* 2 Wall. 501.

We have not time to discuss or quote from the cases upon this point, but refer to them with the general statement that they will be found to agree in holding that the board of commissioners has very broad powers over county property and institutions, and that its discretion in the control and disposition of such institutions is seldom, if ever, interfered with by the courts. *Nixon v. State, ex rel.,* 96 Ind. 111; *Boehmer v. County, etc.,* 46 Pa. St. 452; *State Bank of Bay City v. Chapelle,* 40 Mich. 447; *Board, etc., v. Bowen,* 4 Lansing (N. Y.) 24; *Shanklin v. Board, etc.,* 21 Ohio St. 575. Within the broad grant of power is included the subsidiary one of regulating county institutions and of changing their locations.

There are numerous decisions in our own reports declaring that the board of commissioners constitutes a corporation, and that its rights, duties and liabilities are substantially the same as those of a municipal corporation. In *State, ex rel., v.*

*Clark, supra,* it was said by this court that, "In legal contemplation, the board of commissioners is the county." This general doctrine has often received the approval of the court. *Hoffman* v. *Board, etc.,* 96 Ind. 84, *vide* auth. p. 86; *Nixon* v. *State, ex rel., supra; Patton* v. *Board, etc.,* 96 Ind. 131.

In *McCabe* v. *Board, etc.,* 46 Ind. 380, it was said: "We think it clear that the board of commissioners of a county is to be viewed as capable of acting in several capacities. It is undoubtedly true that the board is a corporation." The powers of the board are much discussed in *Miller* v. *Board, etc.,* 66 Ind. 162, and the rule was laid down that "corporations, along with the express and substantive powers conferred by their charters, take by implication all the reasonable modes of executing such powers which a natural person may adopt in the exercise of similar powers." In support of this position the court cited the cases of *New England F. & M. Ins. Co.* v. *Robinson,* 25 Ind. 536; *City of Lafayette* v. *Cox,* 5 Ind. 38; *Kyle* v. *Malin,* 8 Ind. 34; *Board, etc.,* v. *Day,* 19 Ind. 450; *Haag* v. *Board, etc.,* 60 Ind. 511 (28 Am. R. 654); *Second Nat'l Bank* v. *Town of Danville,* 60 Ind. 504; *Board, etc.,* v. *Saunders,* 17 Ind. 437. These authorities amply fortify the position that the board of county commissioners possess the usual powers of a public corporation over the property and institutions of a county, and it can not be doubted that the logical sequence is that the board may sell property when in its sound judgment it is no longer required for a county purpose, and may change the location of county institutions, if not forbidden, when it is required by the welfare of the people of the county.

In once locating a county institution the board of commissioners does not exhaust its power, for such a power, as is true of all general powers of a similar nature, is not exhausted by a single exercise. A power of the character exercised in this instance is a continuing one. *City of Kokomo* v. *Mahan,* 100 Ind. 242; *Bosley* v. *Ackelmire,* 39 Ind. 536. In the latter case the rule is applied to a case the same in

principle as the present. No other rule, in our judgment, can be sound. It is for the authorities of the locality, and not for the courts, to determine what changes are required by the growth, expansion and other alterations in the condition and progress of a county. The case of *Hanna* v. *Board, etc.*, 29 Ind. 170, is not here in point, even if it can longer be deemed to be effective for any purpose. The question with which we are here directly concerned is not whether the board of commissioners may buy a second farm as an asylum for the poor, but the question is, can the county sell one farm preparatory to the purchase of another? Succinctly stated, the question is, can the board change the location of the county asylum?

We think there can be no doubt that if the board can change the location of an asylum, it may do all acts necessary to effect the change, for it is an elementary rule that the grant of a principal power confers all incidental ones.

In deciding that the board does possess the general power to change the location of county institutions, we have not solved the entire difficulty presented by the specification of the complaint under immediate discussion. Counsel cite us to a provision of the statute reading as follows: "Any asylum or farm provided by the board of county commissioners for the poor may be discontinued by such board, and the property, real and personal, relating thereto, which belongs to the county, may be sold." R. S. 1881, sec. 6098. We can not, however, regard this statute as of controlling force in this case. Here, the purpose is not to discontinue the asylum, but simply to change the location originally selected. The general power to sell is not taken away by the grant of a power to be exercised in special cases. *Leeds* v. *City of Richmond*, 102 Ind. 372. There is no antagonism between the general and the special power. *City of Vincennes* v. *Callender*, 86 Ind. 484. The board may well posess both powers.

We come now to the questions presented by the second spec-

ification of the complaint. In our opinion these questions are settled against the appellee by the authorities. The law as established by the adjudged cases is this: Where there are adversary proceedings of a judicial character, and notice is required, the judicial functions must be exercised at a regular session of the board of commissioners; but where the business is of an administrative or ministerial character, it may be lawfully transacted at a special session properly convened. *Jussen* v. *Board, etc.*, 95 Ind. 567; *Oliver* v. *Keightley*, 24 Ind. 514; *Board, etc.*, v. *Brown*, 28 Ind. 161. The distinction between the class of cases to which the present belongs, and that represented by the case of *City of Vincennes* v. *Windman*, 72 Ind. 218, appears from what is there said, and is so well and clearly defined in *Jussen* v. *Board, etc.*, *supra*, that further comment is unnecessary.

Assuming, as the cases cited fully authorize us to do, that acts of an ordinary ministerial or administrative character may be transacted at a special session, all that remains upon this branch of the case is to determine whether the order to sell property is a ministerial or judicial act. We have a line of cases clearly and fully recognizing the distinction between the two classes of acts, the ministerial and the judicial, and to many of these we have already referred. We now refer to those especially addressed to this point: *O'Boyle* v. *Shannon*, 80 Ind. 159, and the cases cited; *City of Terre Haute* v. *Terre Haute, etc., Co.*, 94 Ind. 305, and authorities cited. Similar in principle to the present is the case of *Allen* v. *Cerro Gordo County*, 34 Iowa, 54, where the character of an administrative act is well illustrated. But the principle which rules here is so clear that we need not cite authorities. If making sale of property is a judicial act, then no sale can be made by any other than a judicial tribunal, not even by direct order of the Legislature itself (*Columbus, etc., R. W. Co.* v. *Board, etc.*, 65 Ind. 427), and we can not think that any one will contend that sales of property must be made by judicial tribunals.

We see no escape from the conclusion that a sale of county

property is a ministerial act, and if it be, it is one to be exercised by the board of commissioners in its ministerial capacity. If it be granted, as we doubt not it must be, that the act is a ministerial one, then it is an act calling into exercise the discretionary powers of the board, and if the discretion is not abused the courts can not interfere. *Mayor, etc., v. Roberts*, 34 Ind. 471; *Bingham v. Board, etc.*, 55 Ind. 113; *City of Terre Haute v. Terre Haute, etc., Co., supra; City of Kokomo v. Mahan, supra; Andrews v. Board, etc.*, 70 Ill. 65; *Motz v. City of Detroit*, 18 Mich. 495; *Robertson v. Breedlove*, 61 Texas, 316.

It is our opinion that the order of sale was one which might lawfully be made at a special session of the board of commissioners, and that the court can not interfere with the exercise of the general power to sell the property of the county, on the ground that the order was made at a special session.

The fourth specification of the complaint belongs in logical order with those discussed, and, passing the third specification for the present, we address our attention to the former specification. We are clear that the cases to which we have referred, and the principles we have stated, rule the questions arising upon this specification, and that these cases and principles require us to decide all of these questions adversely to the appellee.

The act of executing the order of sale was a ministerial act. It was not, therefore, necessary for the board to be in session when this act was performed. The statute provides that sales of county property shall be made at public auction, and this implies that the usual method of conducting such sales shall be pursued. It can not be inferred that an auction sale shall be conducted by a judicial or legislative tribunal convened in actual session. The authorities heretofore cited declare that a board of commissioners possess ordinary corporate powers, and among such powers is that of selling and conveying property in substantially the same manner as natural persons. The power to sell includes the

power to sell and convey in the usual method, unless a mode is prescribed by statute.    Dillon Mun. Corp., sec. 578.

The act of selling the property was a purely ministerial one, and it was, therefore, such a power as the board might delegate to the auditor.   Judge Dillon says: " But the principle that municipal powers or discretion can not be delegated does not prevent a corporation from appointing agents and empowering them to make contracts, nor from appointing committees and investing them with duties of a ministerial or administrative character." Dillon Mun. Corp. (3d ed.), section 96.

The fifth specification of the complaint belongs in proper order with those we have discussed, and we postpone the consideration of the third specification to discuss it.   It is evident from what we have said and from the authorities we have cited, that there is no right of appeal in such cases as the present.   This precise question is considered in many of the cases cited, and received very full and careful consideration in *O'Boyle* v. *Shannon, supra*.   The law as firmly established by our decisions, and they stand on sound principle, is, that where the board of commissioners exercise judicial functions in adversary proceedings where private rights are concerned, there is a right of appeal, but that such a right does not exist where the board acts in a purely ministerial or administrative capacity.   The case of *Grusenmeyer* v. *City of Logansport*, 76 Ind. 549, recognizes this doctrine, for the language employed by the court in that case, as well as the whole course of reasoning, shows with great clearness that the right of appeal exists only in cases where the board exercises judicial functions.   In summing up the result of the review of the cases the court there said: " We therefore hold, that, under section 31 of the general law, there is a right of appeal from any decision of a judicial character, made by a county board in any proceeding."   The opinion in *Hunt* v. *State, ex rel.*, 93 Ind. 311, shows the distinction between judicial and administrative acts, and under the rule there ap-

proved, it is clear that the act of selling county property can not be considered a judicial one. The magnitude of the value of the property sold can not affect the question, and surely courts would not undertake on appeal to review the discretion of the board in ordering the sale of a desk, a chair or a building no longer needed for county purposes.

We have cited many cases, and might easily cite very many more, to the effect that courts can not supervise the exercise of a discretionary power, and to permit an appeal in such a case as this would violate that plain rule. Either the courts can or they can not revise the discretion exercised in selling property; that they can not we well know, and as they can not do this, there is no appeal, since to hold otherwise would be to declare that parties might do a vain thing, for such it would be to bring a case to a court that could take no legal action at all save to dismiss the appeal.

We do not question the proposition that where an appeal lies, and one is taken, the board can no further proceed in the case appealed. *Young* v. *State*, 34 Ind. 46; *Lincoln* v. *State, ex rel.*, 36 Ind. 161; *Blair* v. *Kilpatrick*, 40 Ind. 312. This, however, is a general rule to which there are marked exceptions. *Jeffersonville, etc., R. R. Co.* v. *McQueen*, 49 Ind. 64.

It is not necessary to here inquire what the exceptions are, for the rule can not apply where there is no right of appeal. The rule presupposes that there is a right of appeal; here there is none, and for this reason the case is not within the rule. A party can not stay proceedings by doing what the law does not authorize. A party can not appeal where there is no appeal. An act wholly unauthorized by law is void, and a void thing can confer no rights. Attempting to appeal where there is no appeal accomplishes nothing.

We now direct our discussion to the questions presented by the third specification of the complaint. Two questions arise upon this specification:

*First.* Was the notice given by the board of commissioners such as the law requires?

*Second.* Was the sale made in violation of the terms of the order and notice?

Thus far we have considered and discussed the general powers of the board, and have not examined the mode of exercising the power to sell county property. We are now to consider the mode of exercising that power. It is a familiar rule that where the statute prescribes the mode of exercising a power, the mode prescribed must be adopted. *Leonard* v. *American Ins. Co.*, 97 Ind. 299; 1 Dillon Mun. Corp. (3d ed.), section 449.

Our statute does prescribe the mode in which the power shall be exercised; these are its provisions:. "The board of county commissioners shall not be authorized to sell any county property, either real or personal, except at public auction, after advertising said property for sale sixty days, giving the terms, time, and place of sale, and a description of the property to be sold." R. S. 1881, sec. 4228. In order to make a valid sale, it was necessary for the board of commissioners to give, not only notice of the proposed sale, but also just such a notice as the statute prescribed. *McCrossen* v. *Lincoln County*, 57 Wis. 184.

We can not agree with the counsel for the appellee, that the notice is indefinite and uncertain as to the time and place of sale, for the order is that the sale be made at "public auction, at the door of the court-house, in Elkhart county, Indiana, on the 20th day of April, 1882, between the hours of ten o'clock A. M. and two o'clock P. M. of said day," and the notice given by the auditor copies the order in this respect.

We do not think that the time of making the sale depends, as counsel assert, upon the contingency of the board of commissioners being in session at the time and place appointed for the sale.

The question which we have found the most perplexing one is, whether the terms of sale are given either in the order or in the notice. A notice which omits to give the terms of sale can not be sufficient, for the plain reason that the statute im-

peratively requires that the terms of sale shall be given. The courts can no more uphold a notice defective in one material particular than they can a notice defective in many particulars. We can no more dispense with the requirements of the statute upon one material point than upon another, and we could with as much show of right dispense with a designation of the time and place of sale as with a statement of the terms of sale. What the statute requires must be found in the notice, or it will be insufficient.

It must be kept in mind that the county corporation is an artificial person receiving all its powers from the statute which gave it existence. There is an essential difference between the rights of natural and artificial persons respecting the disposition of property. Natural persons have an inherent right of disposing of their property; while public corporations can only acquire and dispose of property by virtue of some positive law. Where the law designates the method, in which a corporation may dispose of its property, the method designated must be pursued, for there is no inherent right of disposition in corporate bodies. This general rule applies with peculiar force to officers placed in charge of the property of a governmental corporation. These officers have no direct private interest in the corporate property, and there is an absence of the influence of self-interest which impels men to vigilantly guard their private property. In order to supply, in some measure, at least, the place of that influence, the statute has imposed restraints upon the authority of the corporate officers, the commissioners, and has cast upon them duties, which, if faithfully performed, will prevent loss to the political corporation. The statute which governs here is unusually emphatic, for it in express words denies all authority to dispose of county property in any other mode than that prescribed. It not only prescribes a mode in which property may be disposed of, but, in plain, strong terms, excludes all others. A statute more strictly prohibitory could scarcely be conceived.

The rule is, as we have suggested it should be, quite strict in cases where sales of public property are made by public officers. The reason for the rule and its strict enforcement is that officers exercise a naked statutory authority and have no other powers except such as are expressly or impliedly granted. *McCaslin* v. *State, ex rel.*, 99 Ind. 428; *Key* v. *Ostrander*, 29 Ind. 1; *Brown* v. *Ogg*, 85 Ind. 234; *Arnold* v. *Gaff*, 58 Ind. 543; *Vail* v. *McKernan*, 21 Ind. 421; *Williamson* v. *Doe*, 7 Blackf. 12; *Hastings* v. *Jackson*, 46 Cal. 234; *State* v. *Bevers*, 86 N. C. 588; *Stewart* v. *Otoe Co.*, 2 Neb. 177; *State* v. *Torinus*, 24 Minn. 332; *People* v. *Dulaney*, 96 Ill. 503, *vide* p. 508; *Gough* v. *Dorsey*, 27 Wis. 119; *Blodgett* v. *Hitt*, 29 Wis. 169; *Ray County* v. *Bentley*, 49 Mo. 236, *vide* p. 242.

From what we have said it is evident that the statute upon the subject of sales of county property must be applied in its full force and vigor, and, thus applying it, we must hold that the notice ordered by the commissioners and given by the auditor does not state the terms of sale. Whatever might be the just conclusion in other cases, we can see no way to avoid the conclusion that in such a case as this, and under the statute which governs it, the notice of sale is insufficient because it omits to name any price. We suppose it clear that the price of the property is one of the most important terms of a contract of sale. It is so regarded in cases arising under the statute of frauds. Wood Frauds, sec. 345, auth. n. 1. The phrase "terms of sale" means all the essential ingredients of the contract or transaction. If we give the word "terms" its usual and accurate force, we can reach no other result. Worcester says that one of the meanings of the word "terms" is: "Conditions; propositions; stipulations." And Webster gives substantially the same definition.

Unless we hold that the terms of sale must be fixed by the board of commissioners and stated in the notice, we should not only do violence to the language of the statute, but we

should also run counter to settled rules of law. If the price is not fixed by the board of commissioners, then the person who cries the sale and accepts the bid really fixes the price of the property, and this the statute never contemplated. If the auctioneer may accept whatever price is offered, then it is he that makes the terms of sale, and if this be so, they could not be contained in a notice given sixty days previously. If we hold that the auctioneer may accept whatever price is offered, then the result is that we hold that the board may divest itself of the authority devolved upon it by the statute and delegate it to an agent. We think the statute means that the board shall designate a minimum price, state that in the notice as one of the terms of the sale, and offer the property at public auction for the purpose of securing, if possible, a greater price than that fixed. The valuation of the property must be determined on in advance of the notice, or else the terms of the sale can not be stated in the notice. We can not bring our minds to the conclusion that where no price is fixed the terms of the sale are stated, nor can we hold that the duty of designating the price can be entirely delegated to any person occupying the position of an auctioneer. The decision as to price requires the exercise of a discretionary power, and discretionary powers can not be delegated.

If, however, we are wrong in our conclusion that the price must be determined and stated in the notice, still the notice is insufficient, for the reason that it does not state what kind of security will be required. There are various kinds of security, and it is only fair to bidders that they be apprised in advance what security will be accepted. Some might be willing to secure the deferred payment by a mortgage on the land conveyed, and not willing to ask others to undertake as sureties for them; while others would be willing to furnish personal sureties, and unwilling to execute a mortgage. It is evident from the cases we have referred to, that sales of public property are watched with a jealous eye, and the provisions of a statute intended to prevent favoritism and ensure

fair competition upon equal terms to all who choose to compete in bidding, are enforced with a firm hand. If the decision as to what security will be received be left until after the sale, a great purpose of the statute may be defeated, for bidders can not know what will be required of them, and the bids of some may be rejected because the security is unsatisfactory, although in truth entirely sufficient, and the bid of another accepted, although the security proffered is no better than, or, it may be, not so good as, that of other competing bidders. To permit this would be to tolerate a system which the statute intended to break down, and open a way to abuses which the statute was framed to prevent. The decision of the question of the character of the security that will be satisfactory, involves the exercise of a discretionary power, and is one that should be made in advance of the sale. Unless it is thus made, the terms of the sale can not be stated in the notice, and a notice which fails to state the terms of sale is insufficient. In cases of this class the rule as to the notice of sale is very strict. It is thus stated by one of our law-writers: "The notice of sale, as to manner and time, must be such as the order and statute direct, and must correctly describe the property. If given different in manner, or for less time than required by law, or the decree, the sale will be void." Rorer Jud. Sales, section 99.

The phrase "approved security" does not, as counsel assert, mean a note with personal surety, but means any security satisfactory to the officers having the power to approve it. We do not regard the sale as invalid because mortgage security was taken, but we do regard it as invalid because the notice did not state the terms of sale.

There is no force in the position of appellant that the ratification of the sale made it valid. The general rule applicable to public corporations undoubtedly is that an act performed in violation of the terms of a statute can not be ratified. Dillon Mun. Corp., sec. 578. If it were otherwise a statute requiring notice might be rendered entirely nugatory by a board

of commissioners; for, if it be true that a ratification validates, then the board might easily do by indirection what it could not do directly. This case is not one involving the question of the effect of a defective execution of a power, but it is a case where there was an attempt to do what the statute prohibits, for, as we have seen, it declares in plain terms that no sale shall be made except in accordance with its provisions.

The appellant can not successfully build upon the doctrine of estoppel. For this conclusion there are at least two satisfactory reasons: *First.* He dealt with public officers with limited, naked statutory powers; he was bound, at his peril, to ascertain the scope of their authority, and can not found any claim upon acts done by those officers in excess of their statutory authority. This general rule is thus stated by the Supreme Court of the United States: " Individuals as well as courts must take notice of the extent of authority conferred by law upon a person acting in an official capacity." The rule is well established by our own decisions. *Union School Tp.* v. *First Nat'l Bank,* 102 Ind. 464; *Reeve School Tp.* v. *Dodson,* 98 Ind. 497; *Axt* v. *Jackson School Tp.,* 90 Ind. 101; *Pine Civil Tp.* v. *Huber, etc., Co.,* 83 Ind. 121.

The disobedience of a statute by a public officer creates an incurable difficulty. It can not be remedied or removed by subsequent confirmation of the original acts, whatever the form the confirmation assumes. There is a well defined distinction between public and private corporations, and the general doctrine of estoppel does not apply to the former class of corporations. *Union School Tp.* v. *First Nat'l Bank,* *supra; Cummins* v. *City of Seymour,* 79 Ind. 491; *Driftwood, etc., T. P. Co.* v. *Board, etc.,* 72 Ind. 226.

A public corporation, such as a county or city, is composed of the inhabitants of the locality, and the officers are not agents in the strict sense of the term, but are persons acting in an official capacity. *Baumgartner* v. *Hasty,* 100 Ind. 575 (50 Am. R. 830); *Strosser* v. *City of Fort Wayne,* 100 Ind.

443; *City of Valparaiso* v. *Gardner*, 97 Ind. 1 (49 Am. R. 416); *Axt* v. *Jackson School Tp., supra.*

The acts of officers can not bind the local public by estoppel where the officers performing these acts can not bind them by a direct contract. It would be strange, indeed, if an estoppel could validate a sale of property made in violation of law, since, to allow an estoppel to so operate, would frustrate the purpose of the statute and enable the officers to do by indirect means what they could not do by direct proceeding. There may be cases in which a public corporation can be estopped, but this is not one of them, for here there is no possible legal method in which county property can be sold except that provided by law. The method by which a sale may be made is, in terms too clear for misconception, prescribed by the statute, and where the statute so positively restricts the alienation of public property to one method, it excludes all others.

The second reason supporting our conclusion is this: The appellant had full notice of all the material facts, and was warned that the sale would be attacked. He knew that the officers with whom he was dealing had once violated the law in selling him the property at private sale; he was warned at the sale that the taxpayers were objecting; he was notified by the appeal prayed that his right to hold the property would be assailed, and he knew that one of the commissioners was protesting against the proceedings of his associate officers. It is true that the appeal prayed did not operate to suspend proceedings, but it did convey notice. The taxpayers mistook their remedy, but their prayer of appeal and tender of bond was notice that they repudiated the action of the commissioners. The appeal may not have operated as constructive notice, but it did operate as actual notice. There was, therefore, neither concealment nor misrepresentation, nor was there knowledge on the one side and ignorance on the other. There is an entire absence of these elements of an estoppel. *Pitcher* v. *Dove*, 99 Ind. 175, see p. 178; *Mitchell*

v. *Fisher*, 94 Ind. 108; *Anderson* v. *Hubble*, 93 Ind. 570, see p. 573 (47 Am. R. 394); *Buck* v. *Milford*, 90 Ind. 291; *Sims* v. *City of Frankfort*, 79 Ind. 446; *Robbins* v. *Magee*, 76 Ind. 381, and authorities cited. The general doctrine of these cases was applied to a private corporation in *Leonard* v. *American Ins. Co.*, 97 Ind. 299, where it was said: " It is well settled that where both the parties to a transaction have equal knowledge, or means of knowledge, of all the facts, there can be no valid estoppel."

This action is one of the class which taxpayers have a right to institute. They had a right to prevent the officers who represented the governmental corporation from wrongfully disposing of its property. *City of Valparaiso* v. *Gardner*, *supra;* Dillon Mun. Corp. (3d ed.), section 922. As the taxpayers might maintain an action such as this, we can conceive of no reason why this may not be maintained by the officers chosen by the taxpayers to represent them. The case does not belong to the class of actions which must be prosecuted in the name of the State.

We have considered and decided all the material questions presented by the complaint, and now turn to those presented on what is called the special verdict.

Objection is made that the finding of the jury does not state all of the material facts essential to a recovery, and that the motion for a *venire de novo* should therefore have prevailed. We can not regard the finding of the jury as within the ordinary rules applicable to special verdicts. The case is one of equity jurisdiction, and, of right, should be tried·by the court. In all cases of this character the finding of the jury will be treated as advisory unless it appears that the parties and the court treated the case as an ordinary action at law. The ultimate finding is by the court, and it may accept or reject any or all of the findings of the jury. *Pence* v. *Garrison*, 93 Ind. 345; *Lake Erie, etc., R. W. Co.* v. *Griffin*, 92 Ind. 487; *Evans* v. *Nealis*, 87 Ind. 262; *Basey* v. *Gallagher*, 20 Wall. 670.

Under the rule laid down by these cases, the form and contents of the finding of the jury are not material unless it affirmatively appears that the finding was adopted by the court, for if not adopted it would not exert any controlling influence upon the ultimate decision of the case. Whether perfect or imperfect, the finding would be of little importance unless accepted by the court. It is far otherwise in an ordinary action at law, for in such an action the judgment must follow the verdict. The case in hand is easily discriminated from *Summers* v. *Greathouse*, 87 Ind. 205, for there the question was as to the procedure on the trial of a case treated by the court and the parties as an action at law. In this instance it appears that the case was not treated as an ordinary action at law, but rather as a suit in chancery, and therefore a motion for a *venire de novo* was not proper.

The principal questions presented by the ruling on the motion for a new trial have been disposed of in discussing the sufficiency of the complaint, and we proceed to those not already discussed.

We do not think any material error was committed in permitting copies of the deed to the county to be read in evidence. Appellant claimed title from the county, conceded that it owned the land, and certainly could not have been harmed by evidence tending to prove the county's title; so that, conceding, but by no means deciding, that the evidence was incompetent, still no harm was done appellant. *Wilson* v. *Peelle*, 78 Ind. 384; *Stockwell* v. *State, ex rel.*, 101 Ind. 1.

The affidavit and bond for appeal from the action of the commissioners were competent evidence, not because they proved that an appeal was rightfully asked, but because they tended to prove notice to the appellant of the objections to the proceedings of the commissioners.

The evidence shows that a person authorized to act for the county endeavored to tender a deed to the appellant and to make a proposition for rescission, but that the latter refused to listen to what was said, and referred the agent of the county

to another person.   We regard this evidence as sufficient to
sustain the finding of the court.   The appellant's refusal pre-
vented a full tender, and he is not in a situation to complain
that the tender made was not more specific.   *Martin* v. *Mer-
ritt*, 57 Ind. 34 (26 Am. R. 45) ; *Duffy* v. *Patten*, 74 Maine,
396 ; *Frost* v. *Lowry*, 15 Ohio, 200.

Counsel for the appellant in their brief complain that the
jury did not allow a sufficient sum as damages, and say :  " True,
the court attempted to fix the matter up, on the mistaken
theory that this was a chancery case, and though the case had
been fully submitted and tried by a jury, yet the court, in-
stead of giving us a new trial when clearly entitled to it,
undertook to do as it pleased, and assessed the damages itself."
The authorities we have cited very clearly show that the court
did right in revising the finding of the jury, for the ultimate
decision of all questions of fact, as well as of law, must be
made by the court in chancery cases, although it may, if it
deems proper, accept the finding of the jury.

The decree of the court provides that the county " shall
pay to the defendant $3,895, with interest thereon from this
date, and that the said sum of $3,895 is to be paid in addition
to the sum of $6,360, paid by the defendant to the county,
and in the hands of the treasurer, which sum the defendant
is at liberty to receive from the treasurer."   It appears from
this that the court did act upon the evidence, and did assess
in favor of the appellant all that he was entitled to receive.
In such a case as this, if the ultimate finding of the court, and
the decree following it, award justice to the appellant, there
can be no reversal.   *Krug* v. *Davis*, 101 Ind. 75, see p. 77.

The evidence shows that Platter had full knowledge of all
the transactions and purposes of the board of commissioners,
and it justifies the inference that the sale to him of the old
poor farm, and the purchase of the farm from him were so
woven together as to constitute one general transaction.
We can not say that the trial court did wrong in con-

cluding that the purchase from him depended for its efficacy upon the validity of the sale of the old farm.

We have already occupied so much time and space in the discussion of this case that we can not give the question under immediate mention a more thorough discussion.

Judgment affirmed.

MITCHELL, C. J., did not participate in the decision of this case.

Filed Oct. 7, 1885; petition for a rehearing overruled Dec. 30, 1885.