## COLLINS v. BOARD OF COUNTY COMMISSION-ERS OF BIG HORN COUNTY ET AL.

### (No. 711.)

PUBLIC LANDS—TOWNSITE—OFFICIAL PLAT—DEDICATION—COUNTIES—
COUNTY COMMISSIONERS—AUTHORITY TO DISPOSE OF PROPERTY.

1. The fact that a block upon the plat of a town, platted and entered under the Townsite Law, was designated "Court-house Square," did not constitute a dedication of said block to the county; neither the surveyor, the townsite entry-man, nor the Department of the Interior having power, without authority from Congress, to dedicate any part of the public domain embraced within the townsite to the county.

2. The sale by the government of lots within a town, platted and entered under the Townsite Law, according to the official plat of said town as so entered, did not constitute a dedication to the county of a block designated on the plat as "Courthouse Square."

3. Where a patent to the county for a block designated "Court-house Square" on the plat of a town, platted and entered under the Townsite Law, purported to convey the fee, and neither the patent nor the Act of Congress authorizing the issuance of the patent contained any words of limitation, condition, or restriction, nor anything limiting or restrict-ing the use of the premises to any particular purpose, the county became the owner of the land in fee, without any condition requiring that it be used as a courthouse square.

4. The quantity of land to be acquired and held by a county for public purposes not being fixed by law, the matter is vested in the discretion of the board of county commissioners, and, when the board has, in good faith, exercised its dis-cretion in that respect, its acts are not reviewable by the courts; hence the county board may convey to the United States for a site for a Federal building a part of a tract of land owned by a county in fee not deemed necessary for the purposes of a courthouse or county buildings located on another part of the tract.

5. Where a block shown on the plat of a town, platted and entered under the Townsite Law, was designated on the plat "Courthouse Square," and, by authority of Congress, a patent from the United States was issued conveying the block to the county in fee, without any words of limitation,

condition, or restriction, or anything limiting or restricting the use of the premises to a particular purpose, the board of county commissioners of the county, invested by law with the powers of the county, had the power to determine the extent of the land required for courthouse purposes, and to convey a part thereof not so required to the United States for a site for a Federal building.

[Decided September 24, 1912.]          (126 Pac. 465.)

ERROR to the District Court, Big Horn County; HON. CARROLL H. PARMELEE, Judge.

The action was brought by W. S. Collins, in his own behalf and in behalf of citizens and taxpayers of the County of Big Horn, against the board of county commissioners of said county and the individual members of said board, to enjoin the defendants from selling, donating or conveying to the United States certain real estate in the town of Basin, the county seat of said county; the plaintiff claiming that said real estate had been dedicated or conveyed to the county for courthouse purposes in such a manner as to deprive the county or county board of power to dispose of the same for any other purpose. The case was heard in the trial court upon an agreed statement of facts, whereupon the injunction was denied, the petition dismissed, and judgment entered against the plaintiff for costs. The plaintiff brought error. The other material facts are stated in the opinion.

*W. S. Collins,* for plaintiff in error.

A dedication must be construed with reference to its object. The power to divert property from the purpose for which it has been donated does not exist. The official plat of the townsite of Basin was a dedication of the block designated "Courthouse Square" to the County of Big Horn to be held in trust for the use of the public for courthouse purposes. If the court may say that there is more ground in the block than is necessary for courthouse purposes, it might also say that all the ground outside the walls of the

courthouse shall be divided into lots and sold. A court of equity may enforce the execution of this plainly declared trust, either upon the application of the owners of lots abutting on the courthouse square, or any citizen and taxpayer of the county. (Jacksonville v. Jacksonville Ry. Co., 67 Ill. 544; Princeville v. Anten, 77 Ill. 325; U. S. v. Ill. Cent. R. R. Co., 154 U. S. 255; Yolo Co. v. Barney, 12 Am. St. Rep. 152; 79 Cal. 375; 2 Dillon on Munic. Corp., Sec. 533.) No particular form is necessary in dedicating land to public use; all that is required is the assent of the land owner, and the fact of its use for public purposes intended by the appropriation. (Cincinnati v. White's Lessee, 6 Pet. 440; 5 Ency. L. (1st Ed.) 417, 418.)

Upon the agreed statement of facts a complete dedication is shown, and that the land now sought to be appropriated for a site for a federal building is a part of the courthouse square, and has been recognized as such since the year 1896, when the survey was made and the plat adopted by the Department of the Interior, and confirmed by patent from the United States. It has always been so recognized by adjacent land owners, the municipality and the public generally. The plaintiff purchased lots facing on the square in reliance upon such facts, and defendants, by the construction of a temporary jail in 1897 on the square, and afterwards a courthouse and permanent jail thereon, and acquiescence in the cultivation of the ground and the setting out of shade trees by the municipal authorities and the citizens thereof, have accepted the dedication. The law applicabble to the facts denied the right of the county board to now dispose of any part of this land for other purposes. (Riverside v. Maclain, 210 Ill. 308, 71 N. E. 408, 102 Am. St. Rep. 170; Clark v. McCormick, 174 Ill. 164, 51 N. E. 215; Zearing v. Raber; 74 Ill. 409; San Leandro v. LeBreton, 72 Cal. 170, 13 Pac. 405; Church v. Portland, 22 Pac. 528.) A distinction should be made between cases where a public square is dedicated without restriction and where there is a restriction to a particular purpose. The grant to the county in

1902, and the naming of the same as "Courthouse Square" by the deputy surveyor on the plat of the townsite in 1896 were express grants, and the owners of lots separated by a street from said square have an easement of light and air. (Greene v. R. R. Co., 65 How. Prac. 154.)

· The land comprised in the courthouse square is now valuable, and should the Federal building occupy the space intended in the southeast corner of the square others stand ready to divide the remaining portion, and there will be no end to the division until the place will disappear as one of the public squares and valuable public places in the town.

*R. B. West,* County Attorney, for the defendants in error.

The mere act of filing the plat did not constitute a dedication of the block marked "Courthouse Square" the land to the public, so as to restrict the sale and transfer of the tract. The right of disposal of the public domain of the United States rests primarily and solely in Congress, and can only be exercised by that body or by agents or officers authorized to so act. The trustees appointed to sell the townsite did not have authority to dedicate any portion thereof for any purpose. (32 Cyc. 843.) No one was acting for the government prior to the Act of Congress of 1902 or the patent of 1904, who had power to bind the United States and consequently could have passed nothing by way of dedication by the filing of a map in 1896. The government is not bound by the unauthorized acts of its agents. (16 Cyc. 780; Wallace v. Maxwell, 51 Am. Dec. 380; Taylor v. Shufford, 15 Am. Dec. 512; Felor v. U. S., 9 Wall. 45.) Nor is an individual bound by those acting for it in a representative capacity, if they were not his direct privies. (Grunert v. Spaulding, 80 N. W. 589; Arlington Bank v. Paulson, 80 N. W. 263.) The doctrine of estoppel cannot apply, under the circumstances of this case, to the government, and the government, therefore, was not bound by the filing of a map and plat as an individual might have been, and any title acquired by Big Horn county to the land in question was acquired by the Congressional Grant of 1902, and the

patent issued in pursuance thereof. Upon the construction of said act and patent the title of the county must depend. It is the contention of the defendants that the Act of Congress and patent conveyed title in fee to the county, and that the commissioners, therefore, have a perfect right to sell all or any part of the land, the same as any other real estate belonging to the county. Neither the act nor the patent contained any provision for forfeiture or reversion. (Township v. Herman, 71 Pac. 517.)

BEARD, CHIEF JUSTICE.

The plaintiff in error, W. S. Collins, in his own behalf and in behalf of all the citizens and taxpayers of the County of Big Horn, State of Wyoming, brought this action in the District Court of said county to enjoin the defendants in error, the board of county commissioners of said county, from selling, donating or conveying to the United States certain real estate in the town of Basin in said county. The case was submitted to the court upon the pleadings and an agreed statement of facts. The court denied an injunction, dismissed the petition and entered judgment against plaintiff for costs. He brings the case here on error.

The facts as stipulated are as follows:

"1.  That in the month of June, 1896, the east one-half (E½) of the northwest quarter (NW¼), and the west half (W½) of the northeast quarter (NE¼) of section twenty-one (21), township fifty-one (51), north of range ninety-three (93) west, of the sixth principal meridian, was surveyed and platted under what is known as the Government Townsite Laws. Upon said plat was a tract of land containing about ten acres which was designated thereon as the 'Courthouse Square.' That thereafter the government sold a number of lots situated on said townsite, and by Act of Congress of April 2nd, 1902, donated to the town of Basin the remainder of said lots. The tract designated as a 'Courthouse Square' was donated to the County of Big Horn. Said map of said town of Basin containing the plat designated as the 'Courthouse Square' was accepted by the United

States government as the official plat of said tract of land. A patent was issued to the town of Basin for the unsold town lots to be used for the use and purpose of said town. A patent was issued to the County of Big Horn for the tract of land known as the 'Courthouse Square.' A true and correct copy of said Act of Congress and the said patent appears in the petition of the plaintiff.

"2. That thereafter the County of Big Horn entered into possession of said tract of land and erected thereon, near the center thereof, a building which was used by said county as a courthouse, being an office building for the county officers and the county jail, but the District Court never having been held there.

"3. That during the year of 1909, Congress adopted a resolution appropriating a sum of money for the purpose of purchasing a site for a Federal building in the town of Basin. The board of county commissioners of Big Horn county offered for sale a portion of the tract of land, known as the 'Courthouse Square,' being a tract of land one hundred and fifty feet square, located in the southeast corner thereof. On the particular tract of land offered for said Federal building site, no buildings have ever been erected, nor has any other occupancy been made thereof, by the County of Big Horn, the nearest county building being about one hundred and fifty feet from the tract of land offered for sale for the Federal building site.

"4. Subsequent to offering said tract for sale to the United States the commissioners passed a resolution offering said tract to the United States for the sum of $1.00 and other valuable consideration. On or about the 29th day of April, 1911, the United States accepted said offer and the board of commissioners submitted to the United States District Attorney muniments of title and are now threatening to convey said tract of land to the United States, and unless restrained by the court the said board of county commissioners will sell said tract of one hundred and fifty feet square to the United States for the purpose of a Federal

building site, and for the consideration of $1.00 and other valuable consideration.

"5. During the time that the Courthouse Square has been owned by the County of Big Horn and number of people have selected lots adjoining to and facing thereon, some of whom selected their lots because they were so situated and now claim a vested interest in said Courthouse Square by reason of having purchased said lots on the belief that the said tract would always remain free and open, with the exception of such improvements as were made for county purposes only."

The Act of Congress and the patent referred to in the stipulation are as follows:

"An Act providing for the issuance of patent to the townsite of Basin City, Wyoming, to the municipal authorities thereof, for the use and benefit of said town, and for other purposes.

"*Be It Enacted by the Senate and House of Representatives of the United States of America in Congress Assembled,* That the Secretary of the Interior be, and he is hereby, authorized and directed to issue to the properly constituted authorities of the town of Basin City, Wyoming, for the use and benefit of said town, a patent to all that portion of the east half of the northwest quarter and the west half of the northeast quarter of section twenty-one, township fifty-one north, range ninety-three west of the sixth principal meridian, which has not been sold by the United States at the time of the passage of this Act, the above described tract being the townsite of the said town of Basin City; *Provided,* That separate patents shall be issued to Big Horn county, Wyoming, for the courthouse square as shown upon the plat of said town, and to the properly constituted authorities of the school district in which the said town is located for the public school square, as shown upon said plat.

"Approved April 11, 1902."

"*The United States of America.*

"To all to whom these presents shall come, Greeting:

"Certificate No. 1452.

"Whereas, There has been deposited in the General Land Office of the United States a certificate of the Register of the Land Office at Buffalo, Wyoming, whereby it appears that pursuant to the provisions of the Act of Congress of April 11, 1902, (32 Stat., 95) and the regulations thereunder, the County of Big Horn, Wyoming, is entitled to a patent for the reservation known as the 'Courthouse Square,' located in the townsite of Basin City, containing four hundred and ninety thousand square feet, according to the approved plats of said townsite.

"Now know ye, That there is therefore granted by the United States unto the said County of Big Horn, the tract of land above described. To have and to hold the said tract of land, with the appurtenances thereof, unto the said County of Big Horn and to its successors forever.

"In testimony whereof, I, Theodore Roosevelt, President of the United States of America, have caused these letters to be made patent, and the seal of the General Land Office to be hereunto affixed.

Given under my hand at the City of Washington, the twenty-second day of June in the year of our SEAL · Lord, one thousand nine hundred and four, and of the Independence of the United States the one hundred and twenty-eighth.

"By the President, T. Roosevelt.

"By T. M. McKean, Secretary.

"C. W. Bush, Recorder General Land Office.

"Rec. Miscl. Vol. No. 4. Page 160."

Plaintiff's contention is, that the government, by accepting the plat as the official plat of the townsite and selling lots therein according to such plat, thereby dedicated to Big Horn county the ground marked on the plat as "Courthouse Square" to be held in trust for the use of the public for courthouse purposes; that the grant of the square by Con-

gress to the county was for a specific purpose and, therefore, the county commissioners have no authority to dispose of any part of it, or authorize its use for any other purpose. than a courthouse square.

The townsite was platted and entered under the Townsite Law, and when platted was a part of the public domain of the United States. Neither the surveyor, the townsite entryman nor the Department of the Interior could, without authority from Congress, dedicate any part of such public domain to the town, the school district or the county. No such authority has been presented to us in this case, nor do we know of any. The sale of lots by the government in pursuance of the townsite law did not, in our opinion, constitute a dedication to the county of the block designated on the plat as "Courthouse Square." It appears that after a part of the lots were sold Congress, by an Act approved April 11, 1902, authorized and directed the Secretary of the Interior to issue a patent to the town of Basin City for the unsold lots, and separate patents to Big Horn county for the courthouse square, as shown upon the plat, and to the school district in which the town is situated for the school square, as shown upon said plat; and in pursuance of that Act of Congress patents were issued accordingly. We think the title of the county to the land in question and the character and extent of that title must be governed by the terms of the Act of Congress and the patent issued as therein directed. The patent purports to convey the fee: and neither the Act of Congress nor the patent contains any words of limitation, condition or restriction; nor is there anything in either limiting or restricting the use of the premises to any particular purpose. We are clearly of the opinion that by the terms of the Act of Congress and the patent, the County of Big Horn became the owner of the courthouse square in fee simple and that the title would not revert to the government in case the county should cease to use it as a courthouse square. It has been repeatedly held that "where a deed purports on its face to be a grant

absolute and in fee, the expression in the deed of a purpose respecting the particular use to which the property is to be appropriated will not of itself make the estate conditional." (Note to Downen v. Rayburn, 3 A. & E. Ann. Cases, 38, where numerous authorities in support of the statement will be found.) In Downen v. Rayburn, supra, 214 Ill. 342, 73 N. E. 364, 3 A. & E. Ann. Cases, 36, the deed contained, the expression, "to be used as a church location." It was held that those words did not create a condition. In Supervisors Warren Co. v. Patterson et al., 56 Ill. 111, which was an action to restrain the supervisors from selling a block in the City of Monmouth on the allegation that the block in question was purchased as a site for a courthouse and other county buildings, and to which complainants had contributed the sum of $750, a part of the purchase price, the deed contained the words "for courthouse and other county buildings," it was held that the grant was unconditional and that the supervisors could sell the block. In this case the patent contains no such expressions.

The remaining question in the case, viz: whether the county commissioners have authority to convey a part of the block to the United States as a site for a public building, must be determined by our statutes, which are as follows: Section 1067, Comp. Stat. 1910: "Each organized county within the state shall be a body corporate and politic, and as such shall be empowered for the following purposes: 1. To sue and be sued; 2. To purchase and hold real and personal estate for the use of the county and land sold for taxes, as provided by law; 3. To sell or convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interests of the inhabitants; 4. To make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate or administrative powers; 5. To exercise such other and further powers as may be especially conferred by law." Section 1068, id: "The powers of a county as a body politic and

corporate shall be exercised by a board of county commissioners." Section 1069, id.: "Any real or personal estate heretofore conveyed, or which may be hereafter conveyed to any county, shall be deemed the property of such county." As we have above stated, the county became the owner of the square in question by virtue of the congressional grant, and patent from the United States. It is clear that under the statute it must be deemed the property of the county. The part of it which it is proposed to convey to the United States for a site for a public building is not used for courthouse purposes, nor does it appear to be necessary therefor; and it is not claimed that the commissioners are acting in bad faith. The law invests the board with the powers of the county as a body politic and corporate, and to its judgment is committed the power to determine the extent of the land necessary and proper for courthouse purposes. To hold that the board cannot sell and convey any part of this ten-acre tract upon which it has erected county buildings, would be to hold, in effect, that the county having acquired title to it and devoted a part of it to courthouse purposes must forever retain its title and not divert any part of it to other purposes. We do not think such a condition was intended by the Legislature. The quantity of land to be acquired and held by the county for public purposes is not fixed by law; and that matter necessarily must be left to the discretion of some person or board, and in this state that discretion has been vested in the board of county commissioners; and when the board has, in good faith, exercised its discretion its acts are not reviewable by the courts. A case quite similar to the one before us was recently decided by the Supreme Court of Appeals of West Virginia—Keatley et al. v. Summers County Court et al., 73 S. E. 706. In that case the county court of Summers county was about to sell and convey to the United States a part of its courthouse square in the town of Hinton for the purpose of erecting thereon a government building. The plaintiffs brought suit on behalf of themselves and all other taxpayers

of the county to enjoin the sale. The Chesapeake & Ohio Ry. Co., in order to secure the location of the county courthouse in that town, conveyed to the county court a certain square of ground in consideration that within a reasonable time thereafter a courthouse should be erected thereon, and the judicial proceedings of the county should be held upon said premises. By the statutes of that state the county courts were authorized to provide, at the county seats of their respective counties, a suitable courthouse and jail, and to acquire by purchase or otherwise so much land as might be requisite or desirable for county purposes. It was held that the county court was the judge of the quantity of land that was requisite or desirable, and under the statute possessed the implied power to sell so much of the square as it deemed unnecessary for the public purpose. The injunction was denied. (See also, Supervisors of Warren Co. v. Patterson et al., supra; Rosenberry v. Yalobusha Co., 67 Miss. 470, 7 So. 211; Graham v. Nix, (Ark.) 144 S. W. 214; Platter v. Board of Commissioners of Elkhart Co., 103 Ind. 360, 2 N. E. 544; Supervisors of Culpeper v. Gorell et al., 61 Va. 484.) We are of the opinion that upon the facts in this case the District Court properly denied an injunction. The judgment of the District Court is affirmed.                    *Affirmed.*

SCOTT, J., and POTTER, J., concur.